## ASHBACKER RADIO CORP. *v.* FEDERAL COMMU-NICATIONS COMMISSION.

No. 65.  Argued November 13, 1945.—Decided December 3, 1945.

*Mr. Paul M. Segal,* with whom *Messrs. Philip J. Hennessey, Jr.* and *Harold G. Cowgill* were on the brief, for petitioner.

*Mr. Ralph F. Fuchs,* with whom *Solicitor General McGrath, Messrs. Rosel H. Hyde, Harry M. Plotkin, Max Goldman* and *Joseph M. Kittner* were on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The primary question in this case is whether an applicant for a construction permit under the Federal Com-

munications Act (48 Stat. 1064, 47 U. S. C. § 151) is granted the hearing to which he is entitled by § 309 (a) of the Act,[1] where the Commission, having before it two applications which are mutually exclusive, grants one without a hearing and sets the other for hearing.

In March 1944 the Fetzer Broadcasting Company filed with the Commission an application for authority to construct a new broadcasting station at Grand Rapids, Michigan, to operate on 1230 kc with 250 watts power, unlimited time. In May 1944, before the Fetzer application had been acted upon, petitioner filed an application for authority to change the operating frequency of its station WKBZ of Muskegon, Michigan, from 1490 kc with 250 watts power, unlimited time, to 1230 kc. The Commission, after stating that the simultaneous operation on 1230 kc at Grand Rapids and Muskegon "would result in intolerable interference to both applicants," declared that the two applications were "actually exclusive." The Commission, upon an examination of the Fetzer application and supporting data, granted it in June 1944 without a hearing. On the same day the Commission designated petitioner's application for hearing. Petitioner thereupon filed a petition for hearing, rehearing and other relief directed against the grant of the Fetzer application. The Commission denied this petition, stating,

"The Commission has not denied petitioner's application. It has designated the application for hearing as required by Section 309 (a) of the Act. At this hearing, petitioner will have ample opportunity to show that its operation as proposed will better serve the public interest than will the grant of the Fetzer application as authorized June 27, 1944. Such grant does not preclude the Commis-

---

[1] Sec. 319 relates to applications for construction permits. But since such applications are in substance applications for station licenses (*Goss* v. *Federal Radio Commission,* 62 App. D. C. 301, 67 F. 2d 507, 508) the Commission in such cases uniformly follows the procedure prescribed in § 309 (a) for station licenses.

sion, at a later date from taking any action which it may find will serve the public interest. In re: *Berks Broadcasting Company* (WEEU), Reading, Pennsylvania, 8 FCC 427 (1941); In re: *The Evening News Association* (WWJ), Detroit, Michigan, 8 FCC 552 (1941); In re: *Merced Broadcasting Company* (KYOS), Merced, California, 9 FCC 118, 120 (1942)."

Petitioner filed a notice of appeal from the grant of the Fetzer construction permit in the Court of Appeals for the District of Columbia, asserting that it was a "person aggrieved or whose interests are adversely affected" by the action of the Commission within the meaning of § 402 (b) (2) of the Act.[2] The Commission filed a motion to dismiss the appeal for want of jurisdiction on the part of the court to entertain it. This motion was granted without opinion. The case is here on a petition for a writ of certiorari which we granted because of the importance of the question presented.

Our chief problem is to reconcile two provisions of § 309 (a) where the Commission has before it mutually exclusive applications. The first authorizes the Commission "upon examination" of an application for a station license to grant it if the Commission determines that "public interest, convenience, or necessity would be served" by the grant.[3] The second provision of § 309 (a) says that if, upon examination of such an application, the

---

[2] The relevant provisions of § 402 (b) read as follows:

"An appeal may be taken, in the manner hereinafter provided, from decisions of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

. . . . .

"(2) By any other person aggrieved or whose interests are adversely affected by any decision of the Commission granting or refusing any such application."

[3] Sec. 307 (a) provides: "The Commission, if public convenience, interest, or necessity will be served thereby, subject to the limitations of this chapter, shall grant to any applicant therefor a station license provided for by this chapter."

Commission does not reach such a decision, "it shall notify the applicant thereof, shall fix and give notice of a time and place for hearing thereon, and shall afford such applicant an opportunity to be heard under such rules and regulations as it may prescribe." [4]  It is thus plain that § 309 (a) not only gives the Commission authority to grant licenses without a hearing, but also gives applicants a right to a hearing before their applications are denied. We do not think it is enough to say that the power of the Commission to issue a license on a finding of public interest, convenience or necessity supports its grant of one of two mutually exclusive applications without a hearing of the other.  For if the grant of one effectively precludes the other, the statutory right to a hearing which Congress has accorded applicants before denial of their applications becomes an empty thing.  We think that is the case here.

The Commission in its notice of hearing on petitioner's application stated that the application "will not be granted by the Commission unless the issues listed above are determined in favor of the applicant on the basis of a record duly and properly made by means of a formal hearing." One of the issues listed was the determination of "the extent of any interference which would result from the simultaneous operation" of petitioner's proposed station and Fetzer's station.  Since the Commission itself stated

[4] Sec. 309 (a) reads as follows:

"If upon examination of any application for a station license or for the renewal or modification of a station license the Commission shall determine that public interest, convenience, or necessity would be served by the granting thereof, it shall authorize the issuance, renewal, or modification thereof in accordance with said finding.  In the event the Commission upon examination of any such application does not reach such decision with respect thereto, it shall notify the applicant thereof, shall fix and give notice of a time and place for hearing thereon, and shall afford such applicant an opportunity to be heard under such rules and regulations as it may prescribe."

that simultaneous operation of the two stations would result in "intolerable interference" to both, it is apparent that petitioner carries a burden which cannot be met. To place that burden on it is in effect to make its hearing a rehearing on the grant of the competitor's license rather than a hearing on the merits of its own application. That may satisfy the strict letter of the law but certainly not its spirit or intent.[5]

The Fetzer application was not conditionally granted pending consideration of petitioner's application. Indeed a stay of it pending the outcome of this litigation was denied. Of course the Fetzer license, like any other license granted by the Commission, was subject to certain conditions which the Act imposes as a matter of law. We fully recognize that the Commission, as it said, is not precluded "at a later date from taking any action which it may find will serve the public interest." No licensee obtains any vested interest in any frequency.[6] The Commission for

---

[5] The Commission recognizes in its regulations the desirability of hearing such related matters at the same time or in consolidated cases. By § 1.193, 47 Code Fed. Reg. Cum. Supp. it is provided:

"In fixing dates for hearings the Commission will, so far as practicable, endeavor to fix the same date for separate hearings (a) on all related matters which involve the same applicant, or arise out of the same complaint or cause; and (b) for separate hearings on all applications which by reason of the privileges, terms, or conditions requested present conflicting claims of the same nature."

And by § 1.194, 47 Code Fed. Reg. Cum. Supp. it is provided:

"The Commission, upon motion, or upon its own motion, will, where such action will best conduce to the proper dispatch of business and to the ends of justice, consolidate for hearing (a) any cases which involve the same applicant or arise from the same complaint or cause, or (b) any applications which by reason of the privileges, terms, or conditions requested present conflicting claims of the same nature."

[6] See §§ 301, 304, 307 (d), 309 (b) (1) of the Act. "The policy of the Act is clear that no person is to have anything in the nature of a property right as.a result of the granting of a license." *Federal Communications Commission* v. *Sanders Radio Station*, 309 U. S. 470, 475.

specified reasons may revoke any station license pursuant to the procedure prescribed by § 312 (a) and may suspend the license of any operator on the grounds and in the manner specified by § 303 (m). It may also modify a station license if in its judgment "such action will promote the public interest, convenience, and necessity, or the provisions of this chapter . . . will be more fully complied with." § 312 (b). And licenses for broadcasting stations are limited to three years, the renewals being subject to the same considerations and practice which affect the granting of original applications. § 307 (d). But in all those instances the licensee is given an opportunity to be heard before final action can be taken.[7] What the Commission can do to Fetzer it can do to any licensee. As the Fetzer application has been granted, petitioner, therefore, is presently in the same position as a newcomer who seeks to displace an established broadcaster. By the grant of the Fetzer application petitioner has been placed under a greater burden than if its hearing had been earlier. Legal theory is one thing. But the practicalities are different. For we are told how difficult it is for a newcomer to make the comparative showing necessary to displace an established licensee. *Peoria Broadcasting Co. and Illinois Broadcasting Co.*, 1 F. C. C. 167. No suggestion is made here as in *Matheson Radio Co.*, 8 F. C. C. 427 or *The Evening News Association*, 8 F. C. C. 552, that it may be possible to make workable adjustments so that both applications can be granted. The Commission concedes that "these applications are actually exclusive." The applications are for a facility which can be granted to only one. Since the facility has been granted to Fetzer, the hearing accorded petitioner concerns a license facility

---

[7] For the regulations of the Commission governing these procedures see 47 Code Fed. Reg. Cum. Supp. § 1.401 (revocation), § 1.359 and § 1.402 (modification), § 1.411 and § 1.412 (suspension), § 1.360 (renewal).

no longer available for a grant unless the earlier grant is recalled. A hearing designed as one for an available frequency becomes by the Commission's action in substance one for the revocation or modification of an outstanding license. So it would seem that petitioner would carry as a matter of law the same burden regardless of the precise provisions of the notice of hearing.

It is suggested that the Commission, by granting the Fetzer application first, concluded that the public interest would be furthered by making Fetzer's service available at the earliest possible date. If so, that conclusion is only an inference from what the Commission did. There is no suggestion, let alone a finding, by the Commission that the demands of the public interest were so urgent as to preclude the delay which would be occasioned by a hearing.

The public, not some private, interest, convenience, or necessity governs the issuance of licenses under the Act. But we are not concerned here with the merits.[8] This involves only a matter of procedure. Congress has granted applicants a right to a hearing on their applications for station licenses.[9] Whether that is wise policy or whether the procedure adopted by the Commission in this case is preferable is not for us to decide. We only hold that where two *bona fide* applications are mutually exclusive the grant of one without a hearing to both deprives the loser of the opportunity which Congress chose to give him.

In *Federal Communications Commission* v. *Sanders Radio Station,* 309 U. S. 470, 476–477, we held that a rival station which would suffer economic injury by the grant

---

[8] See *Federal Communications Commission* v. *Pottsville Broadcasting Co.,* 309 U. S. 134, 145–146.

[9] Apparently no regulation exists which, for orderly administration, requires an application for a frequency, previously applied for, to be filed within a certain date. Nor is there any suggestion that petitioner's application, which was filed shortly after Fetzer's, was not filed in good faith.

of a license to another station had standing to appeal under § 402 (b) (2) of the Act. In *Federal Communications Commission* v. *National Broadcasting Co.*, 319 U. S. 239, we reached the same conclusion where an application had been granted which would create such interference on the channel given an existing licensee as in effect to modify the earlier license. Petitioner is at least as adversely affected by the action of the Commission in this case as were the protestants in those cases. While the statutory right of petitioner to a hearing on its application has in form been preserved, it has as a practical matter been substantially nullified by the grant of the Fetzer application.[10]

*Reversed.*

MR. JUSTICE BLACK and MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, dissenting.

The extent to which administrative agencies are to be entrusted with the enforcement of federal legislation is

---

[10] A license to operate a station is required in addition to a permit to construct one. As respects an operating license, § 319 (b) provides: "Upon the completion of any station for the construction or continued construction of which a permit has been granted, and upon it being made to appear to the Commission that all the terms, conditions, and obligations set forth in the application and permit have been fully met, and that no cause or circumstance arising or first coming to the knowledge of the Commission since the granting of the permit would, in the judgment of the Commission, make the operation of such station against the public interest, the Commission shall issue a license to the lawful holder of said permit for the operation of said station. Said license shall conform generally to the terms of said permit."

For the regulations of the Commission governing such applications see 47 Code Fed. Reg. Cum. Supp. § 1.357. It was conceded on oral argument that in that proceeding petitioner would not be entitled to intervene to challenge the propriety of the grant of the construction permit to Fetzer without a hearing on petitioner's application.

for Congress to determine. Insofar as the actions of these agencies come under the scrutiny of judicial review, it is the business of the courts to respect the distribution of authority that Congress makes as between administrative and judicial tribunals. Of course courts must hold the administrative agencies within the confines of their Congressional authority. But in doing so they should not even unwittingly assume that the familiar is the necessary and demand of the administrative process observance of conventional judicial procedures when Congress has made no such exaction. Since these agencies deal largely with the vindication of public interest and not the enforcement of private rights, this Court ought not to imply hampering restrictions, not imposed by Congress, upon the effectiveness of the administrative process. One reason for the expansion of administrative agencies has been the recognition that procedures appropriate for the adjudication of private rights in the courts may be inappropriate for the kind of determinations which administrative agencies are called upon to make.

The disposition of the present case seems to me to disregard these controlling considerations, if the Court now holds, as I understand it so to do, that whenever conflicting applications are made for a radio license the Communications Commission must hear all the applications together.

In the regulation of broadcasting, Congress moved outside the framework of protected property rights. See *Commission* v. *Sanders Radio Station,* 309 U. S. 470. Congress could have retained for itself the granting or denial of the use of the air for broadcasting purposes, and it could have granted individual licenses by individual enactments as in the past it gave river and harbor rights to individuals. Instead of making such a crude use of its Constitutional powers, Congress, by the Communications Act of 1934, 48 Stat. 1064, 47 U. S. C. § 151, for-

mulated an elaborate licensing scheme and established the Federal Communications Commission as its agency for enforcement. Our task is to give effect to this legislation and to the authority which Congress has seen fit to repose in the Communications Commission.

To come to the immediate issue, what has the Commission done that is here challenged and what authority from Congress does it avouch for what it has done?

The Commission had before it at least two applications for the use of the same radio wave length in the Western Michigan area (Muskegon-Grand Rapids)—that of the petitioner and Fetzer's. The problem before the Commission was the procedure appropriate in acting upon these two applications. Congress has authorized the Commission to grant an application without resort to a public hearing, 47 U. S. C. §§ 309 (a), 319 (a), but a public hearing may be demanded when the Commission denies an application, 47 U. S. C. § 309 (a). The Court in effect rules that in the case of multiple applications the Commission can decide only after a public hearing on all of them. This requirement is apparently derived from the assumption that in this case the Commission, having received two conflicting applications, shut off, out of hand and quite arbitrarily, petitioner's right to have its application considered, as of course the Commission is in duty bound to consider it, by granting Fetzer's. But that is not what happened. The Commission is charged with the ascertainment of the public interest. We must assume that an agency which Congress has trusted discharges its trust. On the record before us it must be accepted that the Commission, before having taken action, carefully tested, according to its established practice, the claims both of Fetzer and of petitioner by the touchstone of public interest. See Attorney General's Committee on Administrative Procedure, Monograph No. 3, The Federal Communications Commission (1940) 8 *et seq.* On

the basis of such inquiry, it found that the Fetzer application was clearly in the public interest; it found that the Ashbacker application did not make a sufficient showing even to stay the Commission's hand in withholding the Fetzer grant long enough to enable Ashbacker to support its application more persuasively. On the contrary, it thought the public interest would be furthered by making Fetzer's service available at the earliest possible date. There is nothing in the Communications Act that restricts the Commission in translating its duty to further the public interest as it did in the particular situation before it. In granting Fetzer's application and setting the denial of the petitioner's down for a hearing after fully canvassing the situation, the Commission brought itself within the explicit provisions of the Communications Act and applied them with that flexibility of procedure which Congress has put into the Commission's own keeping. *Federal Communications Commission* v. *Pottsville Broadcasting Co.*, 309 U. S. 134, 138.

But it is suggested that the right to a hearing upon denial of an application is not satisfied by a hearing bound to be barren. In order to appreciate the function of a hearing under the statute in a situation like that before us, however, it is vital to remember that the two applications of petitioner's and Fetzer's are very different from an ordinary litigation between Fetzer and petitioner in a court of law. Each of them was before the Commission as the representative of the public interest, the ascertainment of which is the expert function of the Communications Commission. It bears repeating that the application of both presumably received careful scrutiny by the Commission before action was taken. Administrative practice indicates that where there are conflicting applications, the Commission has granted some without hearing where it thought the public interest best served by that procedure, while setting others for hearing where the pub-

lic interest so demanded.[1] Fetzer made a clear showing to the agency designated for the purpose by Congress that the public interest would be served by the grant of its application. The same agency found no basis in public interest for Ashbacker's application. Certainly it is wholly consonant with the scheme of the legislation and the powers given to the Commission that, upon denial of the Ashbacker application after a finding that it would not and Fetzer would serve the public interest, the burden be cast on Ashbacker to show that it would serve the public interest better than would Fetzer. The Commission is authorized by statute to modify a construction permit or any license granted by it.[2] This gives considerable scope for adjusting the prior grant to Fetzer so as to give to the public the benefits of reconciling both the Fetzer and the Ashbacker applications, if the hearing should develop considerations not disclosed by the prior scrutiny of the Commission. Not only that, but the Commission, in its opinion on hearing the Ashbacker complaint, construed its own action in granting the Fetzer application to be conditional, so as to have room for any action which it may find will serve the public interest after the hearing on the Ash-

[1]

| Fiscal Year | Total No. of Applications Considered | Conflicting Applications | | |
|---|---|---|---|---|
| | | Number | No. Granted Without Hearing | No. Granted After Hearing |
| 1941 | 159 | 49 | 14 | 2 |
| 1942 | 142 | 52 | 1 | 2 |
| 1943 | 23 | 5 | 0 | 1 |
| 1944 | 39 | 14 | 2 | 1 |
| 1945 | 114 | 69 | 5 | 8 |

[2] Sec. 312 (b): "Any station license hereafter granted under the provisions of this Act or the construction permit required hereby and hereafter issued, may be modified by the Commission either for a limited time or for the duration of the term thereof, if in the judgment of the Commission such action will promote the public interest, convenience, and necessity, or the provisions of this Act or of any treaty ratified by the United States will be more fully complied with . . ." Cf. 47 Code Fed. Reg. § 1.402.

backer application. Such a practice of conditional grant by the Commission ought not to be deemed outside the range of the procedural discretion allowed to it by Congress.[3]

In this case, however, the restrictions of the hearing granted to Ashbacker do make of it a mere formality, for the Commission put upon Ashbacker the burden of establishing that the grant of a license to it would not interfere with the simultaneous operations of the proposed Fetzer station. But since the Commission had apparently already concluded that the simultaneous operation of the two stations would result in "intolerable interference," its order for a hearing seems to foreclose the opportunity that should still be open to Ashbacker. It is entitled to show the superiority of its claim over that of Fetzer, even though the Commission, on the basis of its administrative inquiry, was entitled to grant Fetzer the license in the qualified way in which the statute authorized, and the Commission made, the grant. In my view, therefore, the proper disposition of the case is to return it to the Commission with direction that it modify its order so as to assure an appropriate hearing of the Ashbacker application. It may be wise policy to require that the Communications Commission should give a public hearing for all multiple applications before granting any. But to my reading of the Communications Act, Congress has not expressed this policy.

MR. JUSTICE RUTLEDGE joins in this opinion.

---

[3] Cf. *Berks Broadcasting Co.* (WEEU), Reading, Pennsylvania, 8 F. C. C. 427; *The Evening News Association* (WWJ), Detroit, Michigan, 8 F. C. C. 552; *Merced Broadcasting Co.* (KYOS), Merced, California, 9 F. C. C. 118, 120.