[Civ. No. 4999.    Fourth Dist.    May 2, 1956.]

In re JOHN THIESEN for Citizenship.  JOHN THIESEN, Appellant, v. UNITED STATES OF AMERICA, Respondent.

Wirin, Rissman & Okrand, A. L. Wirin and Fred Okrand for Appellant.

Laughlin E. Waters, United States Attorney, Max F. Deutz, Assistant United States Attorney, Chief, Civil Division, and Arline Martin, Assistant United States Attorney, for Respondent.

BARNARD, P. J.—This is an appeal from an order denying a petition for naturalization.

The appellant, who is a Russian native, entered the United States with his parents in 1930, when he was about 4 years old.  He is a member of the Mennonite Brethren Church,

and the family entered the United States as a result of aid furnished by that church and, apparently, as a part of a group which fled Russia to escape religious persecution. During World War II the appellant was classified 4-E as a conscientious objector, and assigned to the Civilian Public Service System, in which he served seven months at a forestry camp, and 11 months at a veterans' hospital. He married a native-born American woman in October, 1947, and they have two children. On September 17, 1948, he filed a petition in the superior court of Tulare County for naturalization under section 310(b) of the Nationality Act of 1940.

On the day the petition was filed appellant was questioned by a naturalization examiner and answered a number of questions, among which were the following:

"Q. In the event we should again go to war would you be willing to either enlist or be inducted into the armed forces to serve in the Medical Corps? A. (Note: hesitates several minutes before replying) If that would not have anything to do with killing I would be willing to enlist as a conscientious objector in the armed forces.

"Q. As a Medical Corpsman would you be willing to wear the uniform of the United States Army, that is, serve as first aid men on the front line if need be? A. Well, if it would be giving them first aid so they could shoot again, I can't do that.

"Q. You are advised that from my own experience in the past war, that the medical corpsmen or first aid men did not carry arms, but their duty was to give first aid and to help any soldier who might be wounded on the field of battle. You now state that you would not be willing to serve in the armed forces in this capacity, if it means that the soldier you might be aiding would again be able to take up his own arms in order to kill the enemy, is that correct? A. That's right.

"Q. Likewise then, would you be willing to serve in the capacity of transporting arms to the front line for the purpose of repelling the enemy and killing him if necessary? A. Absolutely not.

"Q. It follows then that you are not willing to serve in the capacity of transporting food and other equipment to our forces in the front line if that meant that our soldiers would thereby be enabled the better able to repel the enemy and to kill him, is that correct? A. That's right.

"Q. Would you be willing, as a farmer to grow food with

the understanding and assurance that the Armed Forces would buy this food for the specific purpose of sending that food which you grew direct to the front lines of our armed forces to feed our soldiers there so that they could the better be able to repel the enemy? A. If I knew it where it was going, in order to kill someone else, I couldn't do it.''

At the hearing the appellant explained his answer to the first of these questions as follows:

''When I made that statement, I am sure I meant that I couldn't have a part in the military itself. What I meant, if we are inducted and—there was—if they said as Selective Service, they asked us conscientious objectors to go and do that kind of work on the battle field (*sic*), certainly I would. But I would not be under the military.''

■ Appellant testified that he was willing to take the oath of allegiance prescribed by section 335 (b)(2) of the Nationality Act of 1940 as amended by the Internal Security Act of 1950, but that he was unwilling to take the oath set forth in section 335 (b)(1) of that act. He asserts in his brief that he is willing to take the oath in the form prescribed by the Nationality Act of 1940; the oath to ''support and defend'' but not the alternate oath to ''perform noncombatant service'' required by the 1950 Act; or to take the oath in the 1952 Act (8 U.S.C. 1448 (a) with its alternate 5 (C) ''to perform work of national importance under civilian direction when required by law.'' Although he contends that the 1940 Act oath is the one here involved, he states he can take any of the three oaths as above indicated in order to be admitted to citizenship. It appears, without dispute, that appellant's opposition to military service is based on religious training and belief and the trial court specifically found that it ''believes that petitioner by reason of religious training and belief is conscientiously opposed to serving in the armed forces either as a combatant or noncombatant.'' In its order the court also found, because of his answers to two of the questions as above quoted, that appellant is not ''attached to the principles of the Constitution of the United States and well disposed to the good will and happiness of the United States,'' and that he ''cannot take the 1952 oath without mental reservation.'' The court also expressed the opinion that the appellant is not able to take either the 1940, the 1950, or the 1952 oath ''without demanding an implicity excision therefrom in excess of those warranted by'' the more recent decisions of the Supreme Court of the United States.

The naturalization examiner originally recommended denial of appellant's petition on the ground that he could not claim conscientious objection by reason of his religious training and belief since some Mennonites, belonging to the same church as appellant, were able to go into military service as non-combatants. Following the decision of the Supreme Court of the United States in *Jost* v. *United States,* 347 U.S. 901 [74 S.Ct. 427, 98 L.Ed. 1061], the examiner withdrew that recommendation for the purpose of a further investigation of the matter. Later, although no further investigation was conducted or any new facts brought out, the examiner again recommended denial of the petition on the ground that the petitioner was unable to take an unqualified oath of allegiance.

The Department of Justice concedes in its brief that the court's decision in this case is inconsistent with that of the Supreme Court of the United States in *Girouard* v. *United States,* 328 U.S. 61 [66 S.Ct. 826, 90 L.Ed. 108], and *Cohnstaedt* v. *Immigration & Naturalization Service,* 339 U.S. 901 [70 S.Ct. 516, 94 L.Ed. 1331]. It confesses error and suggests that, if this court agrees, the decision of the superior court should be reversed and the cause remanded with directions to admit the appellant to citizenship.

While not without reluctance, we are forced to conclude that the factual questions presented by this case have already been determined by the decisions of the Supreme Court of the United States above mentioned, and that the trial court's decision is inconsistent therewith. While the trial court attempted to distinguish this case from the Cohnstaedt case, similar distinctions which were attempted to be made in that case were not upheld by the decision therein.

A question is raised as to whether the oath which should be applicable here is that required by the 1940 Act, the 1950 Act, or the 1952 Act with its alternate 5 (C). The respondent argues that the oath required by the 1940 Act is applicable, and that since the oath required by the 1950 Act is essentially the same it need not be decided which of those two oaths should be given. Since the appellant expresses a willingness to take any one of the three oaths thus mentioned this question need not be decided. Appellant may be taken at his word and given the oath required by the 1952 Act (8 U.S.C. 1448(a) with its alternate 5 (C) "to perform work of national importance under civilian direction when required by law."

The order appealed from is reversed and the cause remanded to the Superior Court of Tulare County, with directions to admit the petitioner to citizenship.

Griffin, J., and Mussell, J., concurred.