255 F.2d 891
 103 U.S.App.D.C. 139
 COMMUNITY TELECASTING COMPANY (WXTV), Appellant,
v.
FEDERAL COMMUNICATION COMMISSION, Appellee, American
Broadcasting-Paramount Theatres, Inc., WKST, Inc.,
Intervenors.
JET BROADCASTING COMPANY, Inc., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, American
Broadcasting-Paramount Theatres, Inc., WKST, Inc.,
Intervenors.
 Nos. 13872, 14241, 13873, 14155, 14236.
 United States Court of Appeals District of Columbia Circuit.
 Argued March 3, 1958.
Decided May 9, 1958.
 
 Mr. Carl L. Shipley, Washington, D.C., for appellant in Nos. 13872 and 14241.
 Mr. Harry J. Daly, Washington, D.C., with whom Mrs. Lenore G. Ehrig, Washington, D.C., was on the brief, for appellant in No. 13873.
 Mr. Warren E. Baker, Gen. Counsel, Federal Communications Commission, with whom Messrs. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, and Mark Fields, Counsel, Federal Communications Commission, were on the brief, for appellee in Nos. 13872, 13873 and 14241.
 Mr. Robert F. Jones, Washongton, D.C., for intervenor WKST, Inc. in Nos. 13872, 13873 and 14241.
 Messrs. James A. McKenna, Jr., and Vernon L. Wilkinson, Washington, D.C., were on the brief for intervenor American Broadcasting-Paramount Theatres, Inc. in Nos. 13872 and 13873.
 Mr. Harry J. Daly and Mrs. Lenore G. Ehrig, Washington D.C., entered appearances for appellant in Nos. 14155 and 14236.
 Messrs. Warren E. Baker, Gen. Counsel, Federal Communications Commission, Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, entered appearances for appellee in Nos. 14155 and 14236.
 Messrs. James A. McKenna, Jr., and Vernon L. Wilkinson, Washington, D.C., entered appearances for intervenor American Broadcasting-Paramount Theatres, Inc. in Nos. 14155 and 14236.
 Mr. Robert F. Jones, Washington, D.C., entered an appearance for intervenor WKST, Inc. in Nos. 14155 and 14236.
 Before EDGERTON, Chief Judge, and FAHY and BURGER, Circuit judges.
 BURGER, Circuit Judge.
 
 
 1
 This case involves the question whether appellants were entitled to a comparative hearing on their applications for TV channel 45 (Youngstown Ohio-New Castle, Pennsylvania). Prior to October 1956, Youngstown was assigned Channels 21, 27 and 73, and New Castle, 17 miles eastward, was assigned channel 45. Youngstown (population 168,000) and New Castle (population 49,000) are considered by the Commission to be in the same trading area. Channels 21 and 27 were occupied by Youngstown stations telecasting to both Youngstown and New Castle audiences. Appellant Community Telecasting, a Youngstown station, was the construction permittee of channel 73, but had not yet begun construction.[1]
 
 
 2
 WKST, a New Castle station, obtained a construction permit for channel 45 in 1952. It completed construction promptly, went on the air with temporary authority in April 1953, and applied for a regular license in February 1954. However, for technical and economic reasons,[2] it suspended telecasting temporarily. It did so, with Commission permission, in January 1955, and remained out of operation for over two and one half years.[3] Its construction permit remained outstanding, and its license application remained pending. WKST sustained and asserted to the Commission that a and asserted to the Commission that a station serving only New Castle was not economically feasible. The Commission denied its request to remove channel 45 to Youngstown.
 
 
 3
 Against this background, the Commission undertook a rule making proceeding to determine whether channel 33 or 45 or both should be assigned to Youngstown. This rule making proceeding culminated in the final report and order of October 1956, reassigning channel 45 from New Castle to the 'hyphenated' area of Youngstown-New Castle. The effect of the 'hyphenation' was to make Youngstown stations as well as New Castle stations eligible to apply for channel 45 were it available. Appellants Community Telecasting and Jet Broadcasting of Youngstown applied for channel 45 on the claim that it was unoccupied. If channel 45 was vacant, appellants were entitled to a comparative hearing to determine to which of the applicants channel 45 should be assigned.[4] The Commission held that WKST was already occupying channel 45, under its permit and license application, and consequently refused appellants' applications without hearings.
 
 
 4
 Appellants claim first that WKST abandoned its construction permit by suspending operations for over 2 1/2 years, thus rendering channel 45 vacant. However, we find substantial evidence to support the Commission's finding that WKST did not abandon channel 45.[5] Second, appellants claim that hyphenation operated authomatically to vacate channel 45. The Commission did not abuse its discretion in ruling that hyphenation did not operate per se to cancel the outstanding construction permit for channel 45 held by WKST.
 
 
 5
 Appellants also contend that WKST will change its status from a New Castle station to a Youngstown station, and therefore it ought not to acquire a Youngstown channel without first being tested in a comparative hearing with Youngstown applicants for the same channel. If this were true, there would be much merit to appellants' contention. The initial grant of channel 45 contemplated that WKST would be and remain a New Castle station. There is no need to decide whether WKST could change itself into a Youngstown station and still keep channel 45 without undergoing the rigors of a comparative hearing because appellants' proposition falls on its factual premise. The Commission ruled that WKST is a New Castle station and not a Youngstown station, notwithstanding the change in location of its transmitter, and there was substantial evidence to support the finding.[6]
 
 
 6
 The Commission has frequently ruled that a station is identified by the place where its studios are kept, not the location of its transmitter or antenna. WKST's transmitter and antenna are now in Youngstown (see notes 2 and 3 supra), but its studios are in New Castle. There is no evidence that the location of WKST's studio in New Castle constitutes a sham, or that it is in reality a Youngstown station. We concede it may be hard to say whether a station with studios in New Castle, antenna and transmitter in Youngstown, covering both Youngstown and New Castle audiences, and competing with Youngstown stations for audiences, networks and advertisers, is a New Castle station. We find no basis for disturbing the conclusions reached by the Commission.
 
 
 7
 We have examined other contentions and find no basis for reversing the Commission.
 
 
 8
 Affirmed.
 
 
 
 [1]
 The reason for the dealy was that Community, for technical reasons, had doubts as to the economic feasibility of a channel as high on the UHF band as channel 73, considering the competition from two stations on lower channels. It had earlier unsuccessfully sought to have channel 33 transferred from another area to Youngstown, and became interested in channel 45 when in October 1956, Youngstown stations became eligible to apply for it
 
 
 [2]
 WKST's transmitter was located on the opposite side of New Castle from Youngstown. New Castle TV, sets were oriented toward Youngstown, whence came major network shows on channels 21 and 27. Thus WKST's signal was not as well received. Because of this WKST was unable to attract network shows and sponsors, and suffered financial losses
 
 
 [3]
 In February 1957, WKST received Commission permission to locate its transmitter and antenna in Youngstown, retaining its studios in New Castle. In October 1957, WKST sought and obtained permission to resume operations
 
 
 [4]
 Ashbacker Radio Corp. v. Federal Communication Commission, 1945, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108
 
 
 [5]
 When WKST went off the air, it advised the Commission that this 'should not be construed as an abandonment' of its permit for channel 45. It continued efforts to estabish a sound economic and technical basis for resumption of telecasting. Its station was kept ready to resume telecasting. The Commission's policy is hospitalble to UHF telecasters which experience difficulty in establishing or maintaining a UHF station. On the other hand, WKST at least at one time had announced it would not resume telecasting as a New Castle station, and it twice unsuccessfully sought permission to telecast on channel 45 as a Youngstown station. Then too, WKST was in fact off the air over 2 1/2 years, although with Commission permission
 
 
 [6]
 See Houston Consol. Television Co. v. Federal Communications Commission, 1956, 99 U.S.App.D.C. 378, 240 F.2d 409