RIDGE RADIO CORPORATION, Appellant

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

Dr. E. Z. Eperjessy, Louis Popp, and William H. Myers, co-partners, d/b/a Windber Community Broadcasting System, Intervenors.

No. 15946.

United States Court of Appeals District of Columbia Circuit.

Argued April 11, 1961.

Decided June 8, 1961.

Messrs. Robert Bennett Lubic and Isadore G. Alk, Washington, D. C., for appellant.

Mr. Richard M. Zwolinski, Counsel, Federal Communications Commission, with whom Mr. John L. FitzGerald, General Counsel, Federal Communications Commission, at the time the brief was filed, Mr. Max D. Paglin, now General Counsel, Federal Communications Commission, and Mr. Joel Rosenbloom, Counsel, Federal Communications Commission, at the time the brief was filed, were on the brief, for appellee. Mr. Daniel R. Ohlbaum, Asst. General Counsel, Federal Communications Commission, also entered an appearance for appellee.

Mr. William P. Bernton, Washington, D. C., for intervenor. Mr. E. Theodore Mallyck, Washington, D. C., also entered an appearance for intervenor.

Before WILBUR K. MILLER, Chief Judge, and BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The Federal Communications Commission denied the request of Ridge Radio Corporation, herein referred to as Ridge, that its application for a new standard broadcasting station to operate on 1350 kilocycles at Windber, Pennsylvania, be consolidated for hearing with other mutually exclusive applications. At the same time the Commission dismissed Ridge's application. Petition for reconsideration was also denied and Ridge then appealed to this court.

The question is whether Ridge was validly denied the consolidated hearing it sought because its application was filed after a cut-off date had been set by the Commission in circumstances now to be stated.

The Commission's rule regarding consolidations, section 1.106(b) (1), reads as follows:

"In broadcast cases, no application will be consolidated for hearing with a previously filed application or applications unless such application, or such application as amended if amended so as to require a new file number, is substantially complete and tendered for filing by whichever date is earlier: (i) The close of business on the day preceding the day the previously filed application or one of the previously filed applications is designated for hearing; or (ii) the close of business on the day preceding the day designated by public notice published in the Federal Register as the day any one of the previously filed applications is available and ready for processing." [1]

On July 30, 1959, the Commission issued a public notice in which it listed fifty applications that would be considered ready and available for processing by September 5, 1959. The notice advised that,

"[A]n application, in order to be considered with any application appearing on the attached list, must be substantially complete and tendered for filing at the offices of the Commission in Washington, D. C., no later than the close of business on September 4, 1959, or, if action is taken by the Commission on any listed application prior to September 4, 1959, no later than the close of business on the day preceding the day on which action is taken." [2]

As September 4, 1959 arrived before action was taken on any listed application that date became the cut-off date under the notice.

Ridge's application was filed November 23, 1959. There were then on file, among others later to be mentioned, the following applications for a new station on 1350 kilocycles at Windber:

"Gosco Broadcasters, herein referred to as Gosco, filed May 15, 1959, public notice of the filing being announced on May 18, 1959; and

"Windber Community Broadcasting System, herein referred to as Community, filed September 4, 1959."

1. 47 C.F.R. § 1.106(b) (1) (Supp.1960).

2. 24 Fed.Reg. 6248–49 (1959).

On January 7, 1960, pursuant to section 309(b) of the Communications Act of 1934,[3] the Commission advised twenty-nine applicants, as well as other known parties in interest; that since their proposals involved mutual interference a consolidated hearing would be required to determine which proposals should be granted. This is the consolidated hearing in which Ridge sought a place. Included among the twenty-nine was WKRZ, Incorporated, licensee of station WKRZ, Oil City, Pennsylvania, seeking increase in power on its frequency of 1340 kilocycles. Also among the twenty-nine was the application of Connellsville Broadcasters, Incorporated, herein referred to as Connellsville, licensee of station WCVF, Connellsville, Pennsylvania, filed August 25, 1959, for increase in power on its frequency of 1340 kilocycles. Connellsville was included because of objectionable interference it would cause to station WKRZ. Also included were Gosco and Community because of objectionable interference they would cause to the Connellsville proposal, and because they were mutually exclusive of each other. Ridge was not included although, like Gosco and Community, it sought a new station at Windber on a frequency of 1350 kilocycles.

Ridge had no interest in any application included in the list published July 30, 1959, but, as above indicated, it did have an interest in the applications of Gosco and Community. As stated, the latter were included in the consolidated hearing because Connellsville, which filed August 25, 1959, created a possible interference with station WKRZ, and Connellsville was also in possible conflict with Gosco and Community. Of these, all except Ridge had filed by September 4, 1959, though only WKRZ was listed in the notice of July 30, 1959, and Ridge had no conflict with WKRZ.

Since the Commission's denial of Ridge's request for inclusion in the comparative hearing referred to in the letter of January 7, 1960, was based on the filing of its application after September 4, 1959, we do not consider any other basis which might have been but was not advanced by the Commission for its decision.[4]

It is not questioned that Ridge would have been entitled under the Ashbacker doctrine[5] to the consolidation it sought unless Ridge was cut off, as the Commission found, under section 1.106(b) (1) of its rule and the July 30, 1959 notice given under the rule. This new provision of the Commission grew out of the administrative difficulties to which the Ashbacker decision gave rise. Some such provision became necessary to prevent inordinate delays which arose through "chain reaction" conflicts such as are illustrated by this case.[6] The right to provide an administrative solution of this sort was suggested by the opinion of the Court in Ashbacker, where it is said:

3. 48 Stat. 1085 (1934), as amended, 47 U.S.C. § 309(b) (Supp. II 1959–60), 47 U.S.C.A. § 309(b), not including the amendment effective December 12, 1960.

4. Since the Ridge application was not timely filed under the cut-off provisions of the Rules to be considered with the applications listed in the 309(b) letter of January 7, 1960, and since it is mutually exclusive with the applications of Gosco and Community listed therein, the application must be dismissed under the provisions of § 1.106(b) (4) of the Rules which states that, "Any mutually exclusive application filed after the date prescribed [cut-off date as published in Fed-

eral Register] * * * will be dismissed without prejudice and will be eligible for refiling only after a final decision is rendered by the Commission with respect to the prior application or applications or after such application or applications are dismissed or removed from the hearing docket." Ridge Radio Corp., 20 Pike & Fischer R.R. 197, 202 (1960).

5. Ashbacker Radio Corp. v. Federal Communications Comm'n, 326 U.S. 327, 66 S. Ct. 148, 90 L.Ed. 108.

6. See Revision of AM Processing Procedure, 18 Pike & Fischer R.R. 1565 (1959).

"Apparently no regulation exists which, for orderly administration, requires an application for a frequency, previously applied for, to be filed within a certain date." [7]

The Commission construes the rule to mean that unless filed before the cut-off date an application may not be consolidated for hearing with any application previously filed, which included WKRZ in this case, with which Ridge had no conflict, and Gosco and Community with which Ridge did have a conflict, but which were not on the list of July 30, 1959. The Commission explains that this meaning of the rule was made clear when the present text of the rule was adopted, though the Commission then recognized that it might exclude from consideration applications filed before the date of hearing itself. The Commission deemed this result to be in the public interest after weighing the rights of the excluded applicant with the need for expeditious disposition of applications.

 We do not in this case question the authority of the Commission to enforce the rule it has adopted, or to give it the construction above set forth. But in carrying out the rule so construed the Commission may not, however inadvertently, give public notice of a cut-off date which does not fairly advise prospective applicants of what is being cut off by the notice. In the present case the Commission published a list of fifty applications that would be considered ready and available for processing by September 5, 1959, and advised potential applicants that "an application, in order to be considered with any application appearing on the attached list, must be substantially complete and tendered for filing * * * no later than the close of business September 4, 1959 * * *." In reading this notice one would reasonably conclude that it was directed only to applications having a possible conflict with some application on the list. It was not a warning that an application filed after September 4 would be precluded from Ashbacker consideration with an unlisted mutually exclusive application filed before that date and which in some way was in conflict with another unlisted application also filed before September 4, which in turn was in conflict with a listed application. To make the amended rule have that effect in a particular case the notice under the rule must be clearer as to the effect intended.

It is difficult enough to read section 1.106(b) (1) itself as the Commission interprets it, but we accept that interpretation in light of the history of the provision. Nevertheless, when a particular cut-off date is fixed by public notice a potential applicant is entitled to rely upon the terms of the notice. The Commission is not required in a notice to phrase its cut-off provision so broadly as to encompass all the rule itself permits. It may validly do less by the notice. In this case we think it did less. As phrased the notice was not fair warning that to be considered with Gosco and Community, not on the list, Ridge must file by September 4. Since, therefore, the notice did not deprive Ridge of its right to an Ashbacker hearing with other Windber-area applications, and since the rule was restricted in this case by the scope of the notice, the order of the Commission will be reversed and the case remanded to the Commission for further proceedings not inconsistent with this opinion. [8]

 We need hardly add that the question as to the adequacy of the notice

7. 326 U.S. at page 333, note 9, 66 S.Ct. at page 151, note 9.

8. In its petition for reconsideration filed with the Commission, Ridge laid emphasis upon the failure of the Commission in its discretion to waive the rule. But the Act does not limit our review to matters stressed in the petition for reconsideration. In view of the contentions and presentations as a whole, before the Commission and this court, we would not feel justified in failing to decide the case on the question of notice.

does not evoke the principle of judicial deference to administrative expertise, often available to support Commission decisions of a different character.

It is so ordered.