**JAMES RIVER BROADCASTING CORPORATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

Rose Mae Springer, etc., et al., d/b as Suffolk Broadcasters, KFAB Broadcasting Company, Intervenors.
No. 21180.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 13, 1967.

Decided July 5, 1968.

Mr. Lauren A. Colby, Washington, D. C., for appellant.

Mr. William L. Fishman, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, John H. Conlin, Associate General Counsel, and Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. William P. Bernton, Washington, D. C., for intervenor, Suffolk Broadcasters.

Messrs. James A. McKenna, Jr., and Vernon L. Wilkinson, Washington, D. C., were on the brief, for intervenor KFAB Broadcasting Company.

Before EDGERTON, Senior Circuit Judge, and BURGER and McGOWAN, Circuit Judges.

PER CURIAM:

This is an appeal from an order of the Federal Communications Commission refusing to consolidate for hearing with competing applications the standard broadcast application of James River Broadcasting Corp., and returning the application as unacceptable. We hold that the Commission has not acted in conformance with its own rules, and accordingly remand the case for further consideration in the light of those rules.

■ Under 47 C.F.R. § 1.571(c) (Supp. 1968) the Commission is empowered to fix and publish a cut-off date for the filing of all applications "which are entitled to be grouped for processing." These include competing applications which, like those in this case, are entitled to a consolidated hearing under Section 309 of the Communications Act, 47 U.S.C. § 309 (1964) and Ashbacker Radio Corp. v. FCC, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945). In accordance with this rule, the FCC on April 27, 1966, notified the public that Virginia Broadcasters had applied for a construction permit for a new 250 watt standard broadcast station on the frequency 1110 kilocycles at Williamsburg, Virginia, and that the cut-off date for all competing applications would be May 31, 1966. The appellant, James River Broadcasting Corp., thereupon commenced preparation of, and on May 27, 1966, filed with the Commission, an application to use the same frequency at Norfolk, Virginia, with a power of 50,000 watts. Another competing application—that of Charles Springer, trading as Suffolk Broadcasters, for a 250 watt standard broadcast station at Suffolk, Virginia—was also filed.

On August 16, 1966, KFAB Broadcasting Co., the licensee of Station KFAB, Omaha, Nebraska, filed a petition to reject appellant's application on the ground that it failed to protect KFAB from electrical "daytime skywave" interference.[1] Appellant's engineer immediately rectified this oversight in the engineering statement and three days later, on August 19, 1966, filed the amendment with the Commission.[2] Months later, on November 2, 1966, the Commission returned appellant's application with the brief explanation that since it was "not acceptable" as of the cut-off date, it was "not timely filed." James River petitioned for reconsideration on November 30, 1966, but all relief was denied in a Memorandum Order and Opinion released July 31, 1967. The order, which designated the Virginia Broadcasters and Springer applications for consolidated hearing, was stayed *pendente lite* by this court on September 26, 1967.

The core of the Commission's reasoning in its July 31 opinion was as follows:

In summary, we find that, since the proposal as originally tendered violated Section 73.187, it was "patently not in accordance with the Commission's Rules" within the meaning

---

[1] This interference would violate 47 C.F.R. § 73.187 (Supp.1968), which provides that

no authorization will be granted for Class II facilities if the proposed facilities would radiate, during the two hours after local sunrise and the two hours before local sunset, [excessive values] toward any point on the 0.1 mv/m contour of a co-channel U.S. Class I station. * * *

[2] Although the Commission has conceded that the error has been corrected, KFAB, an intervenor in this court, persists in its position that the amendment has not cured the interference.

of Section 1.566 [3] and was properly returned as unacceptable. Although the amendment tendered August 19, 1966, corrected the engineering defect, it did not do so until after the lead application's cut-off date. As a result, the application was not timely filed under Section 1.571(c) and was not entitled to consolidation under Section 1.227(b) [4] of the Rules.

■ That the application as filed on May 27 was "patently not in accordance with the Commission's Rules" does not mean that it was properly returned as "unacceptable" on November 2. On the contrary, the Commission's rules explicitly provide that "any application may be amended as a matter of right prior to the adoption date of an order designating such application for hearing." [5] No order had been entered before August 19 designating the competing applications for hearing; and, since the amendment concededly cured any violation of Commission rules before the Commission rejected the application or even commenced any processing, Section 1.566 did not authorize returning the application on November 2.

Apparently recognizing that its action was not supportable by reference to Section 1.566 alone, the Commission resorted to Section 1.227. Since the application was defective on the cut-off date, the Commission reasoned, it was "not timely filed under Section 1.571(c)." But Section 1.571(c) does not require that applications be acceptable when filed. The only requirement of that nature is found in Section 1.227; to be entitled to consolidated hearing, applications must be tendered in "substantially complete" form by the cut-off date. In effect, then, the Commission's reasoning in its July 31 opinion was that since the James River application violated Rule 1.566, on the cut-off date it was not "substantially complete" within Section 1.227. But this is a non-sequitur. An application might easily contain a serious violation of Commission rules which would render it unacceptable and yet be "substantially complete." Indeed, this possibility, and the difference in the thrust of the two sections, is recognized in the Commission's own rules. [6]

It cannot be gainsaid that James River's application was "substantially compete" as originally filed. The Commission requires that applications which seek consolidated hearing be substantially complete for the same reason that they must be filed by a cut-off date—in order to avoid the difficulties of processing competitive applications when one is filed after the processing of another had already begun. [7] Naturally

3. 47 C.F.R. § 1.566(a) (Supp.1968) states: Applications which are determined to be patently not in accordance with the Commission's rules, regulations or other requirements, unless accompanied by an appropriate request for waiver, will be considered defective and will not be accepted for filing. * * *

4. 47 C.F.R. § 1.227(b) (1) (Supp.1968), provides that
no application will be consolidated for hearing with a previously filed application or applications unless such application, or such application as amended if amended so as to require a new file number, is substantially complete and tendered for filing by [the cut-off date]. * * *

5. 47 C.F.R. § 1.522(a) (Supp.1968).

6. 47 C.F.R. § 1.564 (Supp.1968), which is entitled "Acceptance of applications," provides:
(a) * * * Applications which are not substantially complete will be returned to the applicant.
. (b) Acceptance of an application for filing merely means that it has been the subject of a preliminary review by the Commission's administrative staff as to completeness. Such acceptance will not preclude the subsequent dismissal of the application if it is found to be patently not in accordance with the Commission's rules.

7. The Commission explained this policy when it promulgated the cut-off rule in 1959:
The situation [before the cut-off rule] seriously impaired the handling of ap-

these processing difficulties would not be solved merely by the timely filing of an application unless it was sufficiently complete for the processing to begin. But it cannot be maintained that James River's application—which was perfect in every respect at the cut-off date save for the minor infringement of Rule 73.187—contained insufficient information for the Commission to begin comparing its merits with those of the Virginia and Springer applications.

■ The Commission also, of course, cannot tolerate significant amendment to an already filed application. Such an amendment would disrupt the processing just as seriously as a new application. But Rule 1.227 was not drafted to exclude *all* amendments after the cut-off date. Rather, it states that the application "as amended" must be filed before the cut-off date only "if amended so as to require a new file number." [8] The clear implication is that any post-cut-off date amendments which do not require a new file number will be deemed not to have destroyed the substantial completeness of the application, *i. e.*, not to have created a change which would significantly upset the Commission's comparative processing of the ap-

plications. Consequently, the case must be remanded to the Commission to determine in the first instance whether the amendment of James River's application to conform to Rule 73.187 was one which necessitated a new file number.[9] A finding of such necessity would, absent a further determination by the Commission that the requirement may justifiably be waived under the circumstances, conclude James River's participation in this proceeding. Conversely, a finding that no new file number was required would result in its admission to the competitive hearing.

Finally, we should mention that we do not find persuasive the Commission's argument that its construction of its rules is essential to provide the necessary predictability for those planning to file broadcast applications. No such policy of predictability is reflected anywhere in the Commission's rules, nor is it even consistent with those rules. Notwithstanding these objections, the Commission's position is not supportable on its own terms.

One of the policies underlying the cut-off rule is indeed the protection of potential applicants. Those competing applications which are filed before the

---

plications * * * and has been very wasteful of the time of the Commission's staff. It is now clear that there can be no improvement in the status of the processing line unless applications may be processed to a conclusion without interruption and the necessity of reprocessing because of new filings and amendments to pending applications, including those in the processing stage.
AM Processing Procedure, 18 Pike & Fischer R. R. 1565, 1566 (1959). There is also the purpose of apprising potentially competing applicants that they must also file by the cut-off date. See *infra.*

8. *See also* 47 C.F.R. § 1.591(b) (Supp. 1968).

9. This subject appears to be governed by 47 C.F.R. § 1.571(j) (1) (Supp.1968):
   A new file number will be assigned to an application for a new station * * * when it is amended to change frequency, to increase power, to increase hours of

operation, or to change station location. Any other amendment modifying the engineering proposal, except an amendment respecting the type of equipment specified, will also result in the assignment of a new file number unless such amendment is accompanied by a complete engineering study showing that the amendment would not involve new or increased interference problems with existing stations or other applications pending at the time the amendment is filed. If, after submission and acceptance of such an engineering amendment, subsequent examination indicates new or increased interference problems with either existing stations or other applications pending at the time the amendment was received in the Commission, the application will then be assigned a new file number and placed in the processing line according to the numerical sequence of the new file number.

cut-off date must be "substantially complete" so that any other potential applicant will be able to determine whether his application would also compete and therefore must also be filed by the lead applicant's cut-off date. The Commission does not, however, contend that James River's application, as originally filed or because amended, provided insufficient notice for this purpose. Its predictability argument is of a wholly different nature—that the potential applicant is entitled to rely on the certain rejection of defective applications. Because of the need for such reliance, says the Commission, amendments can never be allowed which would make unacceptable applications acceptable after the cut-off date. In essence the argument is that a potential applicant should be able to count on the rejection of James River so that he can, by proposing increased coverage which would otherwise conflict with James River, design the application most likely to succeed in competition with other applicants.

It does not appear, however, that the predictability which the Commission describes could exist under the current rules. Although the Commission states that it never waives technical interference rules, there is nothing which would clearly reveal this to the potential applicant; on the contrary, Rule 1.566 itself provides for waiver, presumably of any rule. Moreover, even if the Commission would not excuse compliance with Rule 73.187, there is no reason why it could not waive the strict interpretation of the cut-off rule for which it now argues. On at least one occasion

it has waived the cut-off rule. Fine Music, Inc., 9 Pike & Fischer R.R.2d 219 (1966). In short, the Commission has not demonstrated that the hypothetical applicant could justifiably count on the rejection of every defective application, even if the court were to affirm in this case.[10]

More importantly, the Commission has not shown a real need for such predictability. The situation described by the Commission is comparable to that in which three or four acceptable and competing applications are actually designated for hearing. Only one of those applications will be granted, but during the perhaps extended period necessary for their comparative consideration, a potential applicant will be precluded from proposing coverage which would conflict with that proposed by any of the participants in the consolidated hearing in the same way that the Commission's hypothetical applicant is precluded by James River's application. Since such large areas of coverage are constantly tied up by consolidated hearings, the Commission may have exhibited a disproportionate concern about the relatively small percentage of that area claimed by defective applications. So long as the defect can be removed without otherwise injuring any public or private interests, the equities of the applicant who timely files a substantially complete proposal containing a minor infraction clearly predominate over those of the potential applicant who must curtail or postpone his application pending the consolidated hearing.

Reversed and remanded.

10. The Commission also implies that anybody looking at the applications could tell at a glance that James River would be rejected. In truth, however, the violation of Rule 73.187 was not noticeable on the face of the application and required considerable technical research to discover. It seems unlikely that there are many potential applicants which give already filed applications this kind of scrutiny to determine whether they will be rejected because defective after their cut-off dates.