Regis J. KIRBY, Marie Maiers, Emily Traum, Henry Simmons, Patrick Maloney, and Norbert Loveland, and all others similarly situated, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, St. Francis General Hospital and St. Francis Plaza, Inc., Defendants.

Civ. A. No. 80-919Q.

United States District Court,
W.D. Pennsylvania.

May 11, 1983.

Michael W. Zurat, Pittsburgh, Pa., for plaintiff.

Richard Martin, Joan Feldman, Baskin & Sears, Joel Straus, Asst. U.S. Atty., Pittsburgh, Pa., for defendants.

## OPINION

DUMBAULD, Senior District Judge.

In *Kirby v. U.S. et al.,* 675 F.2d 60 (C.A.3, 1982), the Third Circuit Court of Appeals held that plaintiffs had standing to sue and that the Secretary of HUD's decision to fund a subsidized housing project for the elderly was not immune to judicial review; and that therefore this Court should not have granted defendants' motion to dismiss plaintiffs' complaint seeking to enjoin funding and construction of the housing complex. Upon remand, defendants have filed motions for summary judgment, supported by affidavits showing that the instant application was approved by HUD on September 19, 1978 (before the enactment of 12 U.S.C. § 1701q(d)(2)(B) on October 31, 1978); and that (plaintiff having offered no evidence in support of its application for a preliminary injunction) construction has been completed without any legal impedi-

ment and that final payment by HUD for the project took place on November 3, 1982.

Under these circumstances defendants argue that plaintiffs' contention based upon non-compliance with 12 U.S.C. § 1701q(d)(2)(B) must fall, since that section was not in effect when the St. Francis project was approved and was therefore inapplicable to it (but if applicable, and properly construed, was in fact complied with); and that the case is moot since it is no longer possible (since the building is completed and paid for) to grant the relief prayed for by plaintiffs in their complaint.

■ We find these contentions meritorious and convincing. They do not conflict with the "law of the case" as contained in the March 19, 1982 opinion of the Court of Appeals. That determination that plaintiffs had standing to sue, to place the merits of their case before this Court for consideration, and that the subject matter of financing construction projects for the elderly is judicially reviewable, does not preclude the dissolution or disintegration of their case by virtue of subsequent events.

Such a decisive subsequent[1] event was the completion of construction of the building, and liquidation of HUD's financial commitment by final payment on November 3, 1982.

Our conclusion that completion of the project is not a legally negligible circumstance is supported by similar cases in other circuits: *South East Lake View Neighbors v. HUD,* 685 F.2d 1027, 1037 (C.A.7, 1982); *Richland Park Homeowners' Assn. v. Pierce,* 671 F.2d 935, 938, 942–43 (C.A.5, 1982). Applicable to the case at bar is the statement of the *Richland* court that "In view of the completion and occupancy of the subsidized apartment project, and noting that there is no showing that HUD acted in bad faith, we find that the plaintiffs are not entitled to the post-completion equitable relief sought, even though HUD may in two minor respects have failed to

---

1. Since defendants' contentions now before us are based upon subsequent events, they are not foreclosed for failure to raise them, as required by Rule 12(g) FRCP, simultaneously with the matters raised by the previous motion to dismiss.

comply with certain ... procedures." 671 F.2d at 938.

The facts of the case at bar present a clear example of mootness. The classic examples of a moot case are situations where, by reason of facts *dehors* the lawsuit, a party either (1) has already obtained the relief sought by the litigation; or (2) by reason of the intervening facts cannot possibly obtain such relief. In either case *lex non cogit ad vana,* and a court will not proceed with the case. Here, the relief sought has become impossible. Plaintiffs are confronted with a *fait accompli,* a perfectly legitimate *fait accompli,* one may add as defendants do, since plaintiffs did not pursue their request for an injunction *pendente lite,* and HUD, the sponsors of the project, the contractors and workmen employed to effectuate it, were under no obligation to "roll over and play dead" while plaintiffs' lawsuit went its merry way.

Construction of the Plaza project was a "one-shot" enterprise, and there is no occasion in the case at bar to consider application of the exception to the rule of mootness where there is a situation "capable of repetition, yet evading review." Cf. *So. Pac. Terminal Co. v. I.C.C.,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Nor are we confronted with a class action, where the initiating plaintiff settles his individual claim, or it otherwise becomes moot, but the claims of other members of the class as a whole remain alive. Cf. *Sosna v. Iowa,* 419 U.S. 393, 399–400, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975).

■ In any event, even if the case were not moot, the reviewing court under the Administrative Procedure Act in a dispute of this sort is a court of equity, and must weigh the respective equities of the parties as well as impact on the public interest. *Richland, supra,* 671 F.2d at 942.

Neither of the two points urged by plaintiffs are sufficiently significant to persuade a court of equity to adopt the drastic remedy of demolishing a useful structure or reimbursing the federal treasury by requiring contractors and laborers who have already done their work to repay the agreed compensation they have earned, without even the solace of a *quantum meruit.*

Even if the three floors (13% of the building) were determined not to be "related facilities" suitable for use by elderly residents within the meaning of 12 U.S.C. 1701q(d)(8), the drastic post-construction relief would be too severe, as the *Richland* court concluded. (From law school days we recollect also *Hahl v. Sugo,* 169 N.Y. 109, 62 N.E. 135 (1901), where equitable relief was denied when the sheriff's return upon execution of a judgment at law for possession of the strip of land involved stated that it was occupied by a portion of the stone foundation and brick wall of defendant's house, and that it was impracticable for him to remove the same.)

With respect to the other point raised by plaintiffs regarding the representative character of the members of the board managing the project, defendants raise additional independent grounds for rejecting plaintiffs' contentions.

From uncontradicted affidavits in support of the defendants' motion it is established that the project involved in the case at bar was approved by HUD on September 19, 1978. But not until October 31, 1978, was the provision relating to local community representation enacted into law.[2] Hence that provision does not apply to the St. Francis Plaza project so as to invalidate it.

In addition to the usual arguments against interpreting a statute as retroactive in the absence of clearly expressed legislative intent that its terms apply to transac-

---

**2.** The Act of October 31, 1978, 92 Stat. 2090, added to the definition of a "corporation" entitled to receive funding from HUD the language of 12 U.S.C. 1701q(d)(2)(B) providing that the corporation must be a non-profit incorporated private institution or foundation "which has a governing board (i) the membership of which is selected in a manner to assure that there is significant representation of the views of the community in which such project is located, and (ii) which is responsible for the operation of the housing project assisted under this section..."

tions consummated before enactment of the law, the particular circumstances relative to HUD financing (likewise established by uncontradicted affidavits in support of defendants' motion) add impressive weight to the case for prospective application when a court of equity evaluates the equities and interests involved in the instant litigation.

The description of the procedure utilized by HUD to select projects for financing demonstrates that the winners are selected by a comparative scrutiny and evaluation, similar to the "comparative hearing" used by the F.C.C. in awarding licenses to operate radio stations. See *Ashbacker Radio Corp. v. F.C.C.*, 326 U.S. 327, 333, 66 S.Ct. 148, 151, 90 L.Ed. 108 (1945).

Consequently a retroactive invalidation of the St. Francis Plaza project would have prejudicial repercussions upon the rank-order of other projects considered by HUD during the annual cycle when the St. Francis project was under consideration. Disruption, frustration, and nullification of a whole year's work by HUD in its program of financing dwellings for the elderly would ensue.[3] Renegotiation of other projects approved or disapproved by HUD would also be necessitated, resulting in chaos and confusion detrimental and harmful to the elderly indigent citizens for whose benefit the HUD financing programs were designed by the Congress.

A court of equity weighing the interests involved would be extremely reluctant to conclude that 12 U.S.C. 1701q(d)(2)(B) should be given a retroactive application to the detriment of the many substantial public and private interests served by the St. Francis Plaza project.

Moreover, defendants argue persuasively that the legislative history of the 1978 amendment [12 U.S.C. 1701q(d)(2)(B)] shows that even if that language applies retroactively it has not been violated (when properly interpreted) by the composition of the St. Francis Plaza board.

The Conference report accompanying the 1978 enactment indicates that "the community in which such project is located" refers to the local area involved in the project, as distinguished from national organizations extending their operations into the local area, rather than to the narrower circle of parties residing in the immediate vicinity of the premises to be developed.

The report states:

This provision is intended to increase involvement of local residents in the development and operation of section 202 housing projects, however the conferees wish to make clear that this increase in involvement is not intended to limit the participation of national nonprofit organizations in the program.[4]

■ Since all members of the St. Francis Plaza board have been residents of the Pittsburgh area, the restriction has not been violated (when interpreted in accordance with the legislative history) even if it were held applicable retroactively.

For the foregoing reasons, defendants' motion for summary judgment must be granted and judgment entered for defendants.

---

**3.** An interpretation giving retroactive effect to the requirements of 12 U.S.C. 1721q(d)(2)(B) [with consequent invalidation of projects approved without compliance with such requirements] might even disrupt HUD programs as far back as 1959, as defendants argue. This would deal a tremendous destructive blow to the public interest in "security of transactions" to use Dean Roscoe Pound's phrase. See Roscoe Pound, *Jurisprudence*, (1959) I, 424.

**4.** Congressional and Administrative News (1978) 4891.