608

DELTA AIR LINES, INC.,
Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent,

Continental Air Lines, Inc., et al.,
Intervenors.

BRANIFF AIRWAYS, INC., Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent,

Continental Air Lines, Inc., et al.,
Intervenors.

TEXAS INTERNATIONAL AIRLINES,
INC., Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent,

The City of Houston et al., Intervenors.

EASTERN AIR LINES, INC.,
Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent,

Continental Air Lines, Inc., et al.,
Intervenors.

NATIONAL AIRLINES, INC.,
Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent,

Continental Air Lines, Inc., et al.,
Intervenors.

AMERICAN AIRLINES, INC.,
Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent,

City of Houston et al., Intervenors.

Nos. 73–1377, 73–1387, 73–1391, 73–1414,
73–1449 and 73–1498.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 5, 1973.

Decided Oct. 23, 1973.

As Amended on Denial of Rehearing
Nov. 20, 1973.

Robert Reed Gray, Washington, D.C., with whom James W. Callison, Atlanta, Ga., and Louis Hayner Kurrelmeyer, Washington, D.C., were on the brief, for petitioner, No. 73–1377, Delta Air Lines, Inc. Nathaniel P. Breed, Jr., Washington, D.C., also entered an appearance for petitioner, No. 73–1377, Delta Air Lines, Inc.

Andrew T. A. MacDonald, Washington, D.C., for petitioner in No. 73–1449, National Airlines, Inc., and Intervenor in Nos. 73–1377, 73–1387, and 73–1391.

James M. Verner, Washington, D.C., with whom John L. Richardson and Stuart F. Pierson, Washington, D.C., were on the brief, for petitioner in No. 73–1391, Texas International Airlines.

Roy Nerenberg, Washington, D.C., with whom Robert N. Duggan, Washington, D.C., for petitioner in No. 73–1414, Eastern Air Lines, Inc.

B. Howell Hill, Jr., Washington, D. C., with whom Patrick F. J. Macrory and Stephen M. Sacks, Washington, D.C., were on the brief, for petitioner in No. 73–1387, Braniff Airways, Inc.

Ky P. Ewing, Jr., Washington, D.C., with whom Alfred V. J. Prather, Washington, D.C., was on the brief, for peti-

tioner in No. 73–1498, American Airlines, Inc.

O. D. Ozment, Deputy Gen. Counsel, C.A.B., with whom Richard Littell, Gen. Counsel, Robert L. Toomey, Atty., C.A.B. and Howard E. Shapiro, Atty., Dept. of Justice, were on the brief, for respondent. R. Tenney Johnson and Warren L. Sharfman, Attys., C.A.B., also entered appearances for respondent.

Thomas D. Finney, Jr., Washington, D.C., with whom Lee M. Hydeman, Washington, D.C., was on the brief, for Intervenor, Continental Air Lines, Inc.

Herman F. Scheurer, Jr., and John J. McLaughlin, III, Washington, D.C., were on the brief, for intervenor, El Paso Civil Interests.

Albert F. Grisard, Washington, D. C., for intervenors, The City of Phoenix, Ariz., The Phoenix Chamber of Commerce and The Tucson (Ariz.) Airport Authority in No. 73–1377.

Robert M. Beckman, Washington, D. C., for intervenors, The Cities and Chambers of Commerce of Midland and Odessa, Tex.

Cecil A. Beasley, Jr., and John C. Smuck, Washington, D. C., were on the brief, for intervenors, City of Houston, Tex., and Houston Chamber of Commerce.

Albert F. Beitel and Roger C. Ohlrich, Washington, D.C., were on the brief, for intervenors, City of San Antonio and Greater San Antonio Chamber of Commerce, in Nos. 73–1377, 73–1387 and 73–1391.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

Petitioners, six air carriers, seek review of the Civil Aeronautics Board's decision in the *Southern Tier Competitive Non-Stop Investigation (Houston-Miami base)* by which the Board determined that there was a need for non-stop service in competition with National Airlines between Miami and Houston, and selected Continental Air Lines to provide such service.[1]

## I.

Petitioners raise various arguments attacking the propriety of the Board's rulings. We have found little merit in these arguments, and accordingly do not pause to consider them in any detail. We find, for example, that the decision of the Administrative Law Judge as adopted by the Board to the effect that there is a sufficiently large market to sustain a competitive challenge to National Airline's monopoly of the Miami-Houston route to be supported by substantial evidence. Similarly, we discern no procedural defect nor deviation from prior decisional norms in the Board's selection of Continental. That selection was made primarily on the grounds that Continental, the only applicant that proposed substantial fare reductions, a feature found attractive by the Board, offered a more attractive pattern of Houston-Miami nonstop frequencies than any of the other applicants, in that it proposed more (4) and better spaced round trips per day. The Board noted that Continental's ability to offer these advantages in the Houston-Miami market was ascribable in good measure to its volume of traffic coming into Houston from points west— *e. g.,* Phoenix, Albuquerque, San Antonio and El Paso. The Board also took into account that Continental offered the extra dividend of more beyond area benefits than those offered by any of the other applicants, in providing new one-carrier service to Miami (via the Houston stop) from Phoenix, Albuquerque and El Paso, and competition for such one-carrier service in the case of San Antonio.

Finally, the Board found that any disadvantages to the Continental application were minimal and easily limited. Without going into detail on these mat-

1. Orders 73–2–89 (S.J.A. 560); Order 73–5–22 (S.J.A. 702); Order 73–5–110 (S.J.A. 685).

ters, we hold that the Board's findings were supported by substantial evidence, and that there has been no substantial showing of unexplained departure from standard decisional doctrine or discriminatory and divergent treatment of the various applicants.

## II.

We turn to the challenge presented by Delta Air Lines in reliance on its claim under the *Ashbacker* doctrine.[2]

With Delta challenging Continental, their positions stand reversed from those occupied when, in 1971, Continental secured a ruling from this court setting aside the Board's 1969 decision concluding that the public convenience and necessity required competitive nonstop service in the Houston-Miami market and awarding the route to Delta. Continental Air Lines, Inc. v. Cab, 143 U.S. App.D.C. 330, 443 F.2d 745 (1971).

Delta's *Ashbacker* argument derives from the fact that Continental will be able to combine, or "tack," its new Miami-Houston award with its existing Houston-west route system, so as to operate through flights (via at least one intermediate stop at Houston) between Miami and Albuquerque, El Paso, Phoenix, or San Antonio. According to Delta, Continental's entry into these markets will preclude Delta from receiving awards which it desires for new authority involving the Albuquerque, El Paso, Phoenix, San Antonio markets.

Delta insists that its complaint requires review of the background of CAB's treatment of airline service in the southern portion of the United States. This could go all the way back to the days when single plane service between California and Florida was achieved only by "interchanged" flights along the routes of several carriers. For present purposes, we can begin our historical approach with the investigation begun by the CAB in 1961 of service then being provided to more than 22 cities lying in and between Florida and California. Southern Trans-Continental Service Case, 33 CAB 701 (1961). The Board's awards of transcontinental route to Delta (Atlanta to Los Angeles/San Francisco) and to National Airlines (Miami to Los Angeles) contemplated full freedom for intermediate stops and protection from competition on these routes. By 1967, the Board concluded that changed conditions called for competition on the established routes, toward the objective of better service between the principal city-pairs in the South. Instead of another general area-wide study the Board decided to focus on service in 18 primary markets.[3]

2. Ashbacker Radio Corp. v. FCC, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945).

3. The 18 markets directly at issue in *Southern Tier* were:

Atlanta—Dallas/Fort Worth
 —Los Angeles/Long Beach
 —San Francisco/Oakland
Dallas/Fort Worth—Los Angeles/Long Beach
 —New Orleans
 —San Francisco/Oakland
 —Tampa/St. Petersburg/Clearwater
Houston—Los Angeles/Long Beach
 —San Francisco/Oakland
Miami/Fort Lauderdale—New Orleans
 —Dallas/Fort Worth
 —San Francisco/Oakland
 —Los Angeles/Long Beach
 —Houston
 —Tampa/St. Petersburg/Clearwater
New Orleans—San Francisco/Oakland
 —Tampa/St. Petersburg/Clearwater

"To keep the investigation within manageable bounds" the Board decided to limit the scope of the case to those designated markets "rather than institute an area type proceeding." Order E–24847 (March 30, 1967). To further this aim, it imposed a pre-trial restriction under which any new award would be in the form of a separate segment instead of an addition to an existing segment. (*Id.* at 3.)

Delta and several other carriers objected to the scope of the case as structured by the Board and sought to expand it into a much broader proceeding. Delta, in particular, requested, *inter alia*, the consolidation of applications for (1) a new route from San Francisco and Los Angeles to Miami via numerous intermediate points, including Phoenix, Albuquerque, El Paso, Dallas, Huntsville, Atlanta, and Tampa, and (2) a second new segment between the same west coast points and Miami via a somewhat different set of intermediate cites, including Phoenix, El Paso, Albuquerque, Dallas, San Antonio, Houston, New Orleans and Tampa.

By Order E–25720 (Sept. 21, 1967), the Board rejected all attempts to broaden *Southern Tier*. It found that any such expansion "would start a chain reaction" transforming the proceeding into a massive area investigation encompassing a review of the needs of hundreds of markets in the southern tier states. (*Id.* at 2, S.J.A. 11). The Board therefore refused to consolidate Delta's applications except to the extent they conformed to the existing scope of the case. It also rejected Delta's related claim that, under *Ashbacker*, a refusal to consolidate its applications would require the Board to impose single-plane restrictions on the operations of other applicants.

If these contentions were true there would be no geographical limit to a proceeding. We do not find these or the extensive pretrial restrictions proposed by Delta to be necessary or desirable for imposition prior to hearing. Neither can we enlarge the proceeding's scope because certain carriers may have more beyond-area traffic advantages than others with respect to some segments to be considered. Differing route patterns afford carriers varying advantages in the service they can offer in any proceeding and it would be impractical to attempt to fashion one in which all were equal. (Order E–25720, p. 3 (S.J.A. 12).)

However, the Board noted that the parties remained free to urge the need for more stringent restrictions during the hearing and expressly invited them to submit evidence to prove mutual exclusivity. (*Ibid.*)

Delta (along with National) then moved for judicial review of the Board's instituting orders. It argued that the Board had violated *Ashbacker* by including the issues of transcontinental authority on a nonstop basis or via one-stop at certain southern tier cities (New Orleans, Houston, Dallas), while excluding applications for one-stop transcontinental routes via other southern tier points (including Phoenix, Albuquerque, San Antonio and Huntsville).

In National Airlines v. CAB, 129 U.S. App.D.C. 180, 392 F.2d 504 (1968), this court dismissed Delta's petition, finding that the Board was not required as a matter of law to consolidate the carrier's excluded applications. We took cognizance of the Board's standard practice of permitting parties to make a factual showing of economic mutual exclusivity between such excluded applications and the route issues within a proceeding.

■ Our 1968 *National Airlines* decision is of significance because in a context almost identical to that presented here[4] this court there made clear that the *Ashbacker* rule is basically a rule of fairness in comparative consideration, that it must be applied with common

_____

4. Even though Delta's *Ashbacker* claim was dismissed as premature rather than conclusively rejected.

sense and in a practical fashion, that it cannot be applied in the same way to complex air route questions as to telecommunications proceedings, and that *Ashbacker* cannot be applied so as to impair or eradicate the considerable measure of discretion that the Board must retain in defining the scope of air route cases.

 It bears reiteration that the Board is not obliged to structure its proceedings so as to equalize the beyond market capabilities of all applicants to a route case. As this court observed in National Airlines v. CAB:

> Pre-existing route intricacies render it almost impossible for the Board to tailor its proceedings so as to equalize the advantages, and disadvantages, with which each applicant enters a comparative proceeding. The maturing and sophisticated route structure and development preclude a simplistic vindication of Ashbacker claims.

129 U.S.App.D.C. at 184, 392 F.2d at 508.

The rejection in the *National Airlines* case of any simplistic presentation of *Ashbacker* claims has full vitality for that aspect of the opinion that upheld the Board's approach in refusing to transform *Southern Tier* into a massive area investigation. This court said:

> Petitioners claim that the exclusion of San Antonio, Tucson and El Paso from any of the scheduled proceedings deprives them of *Ashbacker* rights because petitioners have applied for transcontinental routes with intermediate stops at these excluded cities. American Airlines, for example, presently serves these excluded cities on routes extending from Houston and Dallas to the West Coast. By acquiring Miami-Houston and Dallas authority in Southern Tier, American would have a transcontinental route that would, say petitioners, economically exclude the applications petitioners have filed for similar authority.
>
> We think this situation is analogous to that in Eastern Airlines, Inc. v.

Civil Aeronautics Board [100 U.S. App.D.C. 184, 243 F.2d 607]. There Northwest applied for Detroit-Miami rights which Eastern already had, and the Board scheduled this service for investigation. Eastern sought expansion of this hearing to include its application for Detroit-West Coast rights already held by Northwest. Eastern contended that this was required by *Ashbacker* since a grant to Northwest would *de facto* give it West Coast-Detroit-Miami rights, and that if Eastern were not then given an opportunity to attain the same transcontinental route by completing its missing segment, it could not as an economic matter justify a second carrier on that route. We held that Eastern could not, in the name of *Ashbacker*, extend a geographically limited investigation "into a massive consideration of the whole of American air transportation." (Footnotes omitted.)

129 U.S.App.D.C. at 186, 392 F.2d at 510.

 The thrust of Delta's present *Ashbacker* claim to this court is that the CAB has denied Delta a right to a fair hearing because it has refused to hear Delta's application for authority to serve an area, has avowedly structured the proceedings so as to avoid area considerations, and has nevertheless granted the route in issue to Continental on the basis of the service it can render to the same area. Delta says that the decision before us for review violates this principle because the Board has selected Continental because of beyond-area benefits to the "excluded points."

It would serve no useful purpose for this decision to become entangled in all of the details of Delta's objections, and what the Board counsel identifies as its change in the service it really proffers so far as the excluded points are concerned. It suffices to say that the Board decision does not rest in dominant degree upon the beyond-area benefits to the "excluded points." That is to say, this is not a case where Continental

had no advantage over the competing carriers in terms of Houston-Miami service, and was awarded the route because of the beyond-area benefits. The Board was primarily focused on service between Houston and Miami and did not, fairly speaking, convert this into an area case which turned on determination of the service to and from excluded points, or any determination of the need for such service or the carrier best qualified to give such service.

It is true that the Board did give consideration to traffic generated at the excluded points when it came to measure the quantity of traffic between Houston and Miami—for the purpose of appraising the feasibility and realism in Continental's proffer as to Houston-Miami service, and of appraising the quantity and quality of the Houston-Miami service proposed by Continental. But the focus was on the Houston-Miami segment, even though the CAB traditionally views proposals for any particular segment not with tunnel vision but rather with a peripheral vision that takes into account the support (or diversion) ascribable to nearby service.

In sum, Delta's *Ashbacker* claim rests on the fallacy that Continental was selected for its ability to serve the needs of the excluded cities whereas it was acutally selected upon evaluation of the Houston-Miami market, its need for service, and the kind of service in that market proffered by Continental, including the service made possible by Continental's backup support—four well spaced round trips daily at fare reductions, and all of the other items discussed above.

Delta was given the opportunity to make a showing of mutual exclusivity that *Ashbacker* contemplates. But that did not require putting its applications on an equal par with the backup service in fact available from Continental's existing traffic. As already noted, pre-existing certificates do give an advantage to certain applicants for a new segment, but that is not inherently unfair. Nor

can we open the door to an equalization approach that would encourage all kinds of defensive route applications. The Board must act realistically in terms of existing route identification and business patterns.

The four members of the Board were in agreement in denying the *Ashbacker* claim in Delta's petition for reconsideration, and we are in agreement in rejecting its petition for review.

### III.

### A.

■ Various parties claim that route restrictions should have been imposed upon Continental to protect the losing applicants against excessive diversion of traffic. They claim inconsistency between the Board's decision not to impose restrictions (Order 73–2–89 pp. 11–12 (S.J.A. 571–72); (Order 73–5–22 p. 13 (S.J.A. 714) in order to protect competitors from excessive diversion and its qualification of the award to Continental by a two-stop requirement of any transcontinental route by the carrier along the southern tier (Order 73–2–89 p. 4 (S.J.A. 564). We discern no inconsistency. The purpose of the two-stop limitation upon Continental is to "preserve for the Board maximum decisional flexibility" in awarding a new transcontinental route, already in the hearing process, by assuring that Continental did not become a substantial participant in Miami-Los Angeles traffic. *Id.* In no way did the Board intimate that these restrictions were being used to protect certain of the applicants from diversion. In fact, the Board found that the award of the Miami-Houston route to Continental would involve only minimal diversion. (Order 73–2–89 pp. 11–12 (S.J.A. 571–72).

■ Upon reconsideration, requests for operating restrictions were pressed more forcefully. Petitioners here assert that settled practice entitles carriers to defer their arguments on route operating restrictions until the Board has made its award to one of the competing

applicants. We see no valid foundation to such a claim of entitlement. Typically, all parties are aware of what routes are being sought and by whom. They can argue, possibly in the alternative, that if such routes are granted operating restrictions will be necessary to prevent undue diversion. Indeed, it would seem appropriate that the Board should have before it the argument as to amount of restriction that would be required as to any particular carrier so that it could consider whether to assume that burden in making such an award.

### B.

 Finally, we endeavor to put to rest two erroneous theories of proper Board procedure. American Airlines protests the failure of the Board to give reasons why it did not award the route on the basis of a "net-benefit" formula propounded by American. No such burden can be put on an agency. Reasoned decision making demands that an agency articulate the standards upon which it bases it awards. The Board did so here by expressly adopting the Administrative Law Judge's Initial Decision, which contained an explanation of the ten carrier selection factors. (Order 73-2-89 p. 1 (S.J.A. 561); (Initial Decision of Examiner Wm. H. Dapper pp. 20-21 (S. J.A. 498-99). The agency had sufficiently indicated its general approach in terms of the factors that were taken into account. This necessarily entailed judgment on the part of the CAB in its heft of the various factors in any particular case. It was not required—indeed, it may well have been unable—to produce a quantifying formula as the definition of its approach. It may be said, indeed, that American's formula, oversimplified, is merely that the less service is offered, the less diversion will result. The Board, however, although required to consider diversion, was entitled to go beyond the applicant that caused the least diversion and select the carrier that proffered the most service to the public.

 National Airlines asserts that it was entitled to a determination of its petition for reconsideration by a majority of the Board, and that delay until a five-man board came into being was consequently required when the Board split 2-2 on its petition for rehearing. We find no merit in this point. In Braniff Airways v. CAB, 126 U.S.App.D.C. 399, 379 F.2d 453 (1967), we found a Board duty to consider a matter upon rehearing where the application for reconsideration identified a fundamental defect in the Board's order as originally entered. For reasons already set forth, that is not the condition that confronts us here. Where the Board's order is without such a gross defect, its initial decision is ordinarily to be taken as its authoritative action. The Board has the legal authority to decide upon reconsideration whether to adhere to its initial conclusion or to amend or reverse it; but a party has no right to reconsideration by more than quorum of the Board. Where that quorum refuses to take action to overturn an order valid when originally entered, the administrative process is terminated.

The petitions to review are denied, and the Board's order stands affirmed.

So ordered.