589 F.2d 486
 HEALTH SYSTEMS AGENCY OF OKLAHOMA, INC., an Oklahoma
Corporation, Plaintiff-Appellant,
v.
Floyd A. NORMAN, M.D., As Regional Health Administrator,
Public Health Service, United States Department of
Health, Education and Welfare, Defendant-Appellee,
and
Oklahoma Health Systems Agency, Inc., an Oklahoma
Corporation, Intervenor-Appellee.
 Nos. 76-2002, 77-1147.
 United States Court of Appeals,
Tenth Circuit.
 Argued March 13, 1978.
Decided Dec. 18, 1978.
 
 Carl G. Stevens, Oklahoma City, Okl. (with Louis Bullock, Stillwater, Okl., on the brief), for plaintiff-appellant.
 Michael Kimmel, Civ. Div., Appellate Section, Dept. of Justice, Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., John E. Green, U. S. Atty., Oklahoma City, Okl., and Robert E. Kopp, Civ. Div., Appellate Section, Dept. of Justice, Washington, D. C., with him on the brief), for defendant-appellee.
 William J. Robinson, Oklahoma City, Okl., for intervenor-appellee.
 Before HOLLOWAY, DOYLE and McKAY, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 Under the terms of the National Health Planning and Resources Development Act (the Act),[1] the governor of Oklahoma designated the entire state a "health service area." Thereafter, Health Systems Agency of Oklahoma, Inc. (plaintiff) and Oklahoma Health Systems Agency, Inc. (intervenor) filed letters of intent to submit applications for conditional designation as the Health Systems Agency for Oklahoma.[2] The Department of Health, Education, and Welfare (HEW) had the obligation to designate Health Systems Agencies for all health service areas. All parties agree that the responsibility to designate the Health Systems Agency for Oklahoma had been delegated to defendant Regional Health Administrator.
 
 
 2
 HEW published a notice stating that all applications must be received by January 19, 1976, in order to be considered in the first review cycle. 40 Fed.Reg. 53297, 53298 (November 17, 1975). While second cycle applications were due April 16, 1976, they would be considered only if no entity had been previously designated. Id. Assorted state agencies (some 23 in Oklahoma) were also authorized to receive, review, and comment on the applications.
 
 
 3
 Plaintiff had its application in final form on January 19, 1976, and it submitted copies on that date to all state agencies. It became apparent, however, that a printing delay would make it virtually impossible for plaintiff to tender the required copies of its application to defendant's Dallas, Texas office during business hours on the 19th. Plaintiff's representative telephoned defendant's office, apprised an official there of the situation, and explained that while plaintiff's application would not be in by the close of business, he could have it there by midnight that evening. The official stated that if plaintiff's application was in defendant's office prior to 8:00 a. m. on the 20th, the beginning of the next work day, it would be considered as having been received on the 19th. Plaintiff's representative set out for Dallas by plane on the evening of the 19th, arrived shortly after midnight, and checked into a hotel near defendant's office. He instructed hotel personnel to awaken him at 6:30 a. m.
 
 
 4
 Despite the instruction to the hotel staff, plaintiff's representative overslept. As a result, he tendered the application at 8:55 a. m., a mere fifty-five minutes beyond the 8:00 a. m. extended deadline. The representative was informed that the application could not be accepted for first cycle consideration, but an official consented to take physical custody of the application pending plaintiff's attempt to have the nonacceptance reconsidered.
 
 
 5
 On February 27, 1976, defendant informed plaintiff by letter that its application could not be accepted for consideration in the first review cycle. Defendant's reason for rejecting the application was that there was no provision in the published notice for waiving the deadline. By the time defendant wrote plaintiff, all 23 state agencies had reviewed plaintiff's application and had submitted their comments to the Region VI office.
 
 
 6
 During February and March, defendant and his associates reviewed the application of the intervenor. After intervenor had made substantial amendments in its application, it was designated the Health Systems Agency for Oklahoma.[3] Meanwhile, plaintiff brought this action under the Administrative Procedure Act, 5 U.S.C. § 701 Et seq. (1976).
 
 
 7
 The trial court made a finding of fact that defendant had no discretion to accept late applications. It also concluded that, as a matter of law, the court lacked jurisdiction to entertain plaintiff's complaint "because the January 19, 1976, deadline was jurisdictional and the failure of the plaintiff to file within that time deprived the Court of jurisdiction thereover." Record in 76-2002, vol. 1, at 35. It further concluded that HEW "did not abuse its discretion because it had no discretion with respect to the deadline." Id. at 36. Plaintiff appealed.
 
 
 8
 Plaintiff subsequently discovered new evidence suggesting that defendant in fact had the discretion to accept late applications.[4] It then moved to set aside the judgment on the basis of this evidence, contending HEW officials had wrongfully withheld it at trial. The motion was denied following an evidentiary hearing, the trial court concluding the new evidence did not contravene its earlier conclusion that defendant lacked discretion to accept late applications. Plaintiff again appealed. The two appeals have been consolidated for briefing, argument, and decision.
 
 I.
 
 9
 The trial court's legal conclusions that HEW lacked the discretion to accept late applications and that the submission deadline was " jurisdictional" were erroneous.
 
 
 10
 "(T)he general principle" is that " (i)t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it." American Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 539, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970) (quoting N. L. R. B. v. Monsanto Chemical Co., 205 F.2d 763, 764 (8th Cir. 1953)).[5] Defendant does not suggest that HEW's application deadline in this case was statutory, or that it was for a purpose other than "the orderly transaction of business before it." The date was a wholly arbitrary one, administratively chosen to insure that applications would be received in sufficient time for HEW to review them and make the Health Systems Agency designations before July 4, 1976 the date by which HEW was statutorily directed to have completed the designation process. The fact that the deadline was published in the Federal Register does not alter the applicability of the general principle of discretion.
 
 
 11
 The government's analogy to the rule applicable to late public bids is not persuasive. Indeed, that analogy makes just the opposite point. The federal bidding procedures are governed by an express rule restricting the exercise of the authority that otherwise would exist to accept and consider late bids. See 41 C.F.R. § 1-2.303 (1977). There is no comparable relinquishment of discretion in this case.
 
 
 12
 The government does not seriously argue in its brief that HEW lacked the ability to extend the deadline if it saw fit. We agree with its acknowledgment that "the authority to extend a deadline is primarily a matter for agency determination in the public interest." Appellee's Brief at 25. This is clearly the law applicable to this case, where the deadline in question was not jurisdictional.
 
 II.
 
 13
 The government argues that only the Secretary of HEW and his subordinate who published the deadline notice had the discretion to grant a deadline extension. No authority for this bald assertion is cited. Defendant was granted authority to receive and process the applications for Health Systems Agency designations in his region and to select the successful applicant for each health service area, including Oklahoma. In the absence of an express withholding of authority by the Secretary, it is presumed that the official charged with primary discretion is also charged with exercising the related and subordinate discretions necessary to carry out the function.[6] Once the primary duty is shown, the burden is on the government to show that the related and subordinate discretions have in fact been affirmatively withheld or withdrawn.[7] This the government has failed to do.[8] Indeed, the record in this case shows just the opposite.
 
 
 14
 By memorandum dated February 5, 1976 (long before defendant had begun significant application processing) HEW reaffirmed the Regional Administrators' discretion to waive the deadline and provided specific additional guidelines for its exercise.[9] HEW directed Regional Administrators to interpret the January 19 deadline without undue rigidity and to "accept and consider all applications which were 'in effect' received by January 19 as long as they are otherwise acceptable. This would include applications which were in final form as of that date." Record in 77-1147, vol. 2, at 74. Not only was plaintiff's application in final form on the 19th, but on that date it had been filed with the 23 state agencies and was in transit to defendant with a promise that it would be accepted at the opening of business the following day. Under these circumstances, equivocation on the extension given until the opening of business the next day or invocation of the additional 55 minutes as an absolute bar, would be clearly "unduly rigid."[10] The question remains whether the nonacceptance, in addition to being "unduly rigid," was also an abuse of discretion.
 
 III.
 
 15
 Agency action amounting to an abuse of discretion must be set aside. 5 U.S.C. § 706(2)(a) (1976). Although a refusal to waive nonjurisdictional deadlines would generally not constitute an abuse of discretion, we conclude that defendant, in the circumstances of this case, abused his discretion by refusing to accept plaintiff's application for first cycle review. The minimum standards for the reasonable exercise of discretion by defendant were set by HEW itself in its February 5 directive to Regional Health Administrators.[11] These standards were not followed by defendant. It would be a rare case indeed in which an administrative decision flatly contrary to articulated agency policy would be found a proper exercise of discretion.[12] The government has made no attempt to show special circumstances in this case justifying a departure from the guidelines.
 
 
 16
 HEW indicated in its February 5 letter that the public interest would be furthered (and its interests not subverted) by making narrow exceptions to the deadline requirement for applicants whose applications were in final form on the date of the deadline. It was an abuse of discretion to ignore the legitimate governmental interests in facilitating comparative analysis among applicants and in relieving applicants who had spent months in preparation of their applications from an "unduly rigid" adherence to the deadline. The particular facts of this case make this conclusion more compelling. These facts are: that all state agencies were in timely receipt of plaintiff's application and submitted their comments to defendant on time; that defendant's office was fully aware of plaintiff's serious participation in the application process; that the initial deadline might have been met had defendant's office not indicated the acceptability of delivery by 8:00 a. m. the next day; that the late filing was merely technical and acceptance for review would have engendered no delay to defendant's review timetable or other administrative inconvenience; that the time allowed for preparation of the complex application was relatively short;[13] that the few minutes of tardiness on the morning of the 20th were both understandable and excusable; and that HEW actually accepted for first cycle review a Region IV application that was in final form on the 19th but was not received until after the expiration of the published deadline.
 
 
 17
 Since the refusal to accept and consider plaintiff's application in the first cycle was an abuse of discretion, it follows that plaintiff's application should have been accepted and reviewed by defendant. Substantive review of plaintiff's application in the early months of 1976 was thus "agency action unlawfully withheld" which the trial court must "compel." 5 U.S.C. § 706(1) (1976). Pursuant to this provision of the Administrative Procedure Act, it is the duty of the trial court to direct HEW to accept plaintiff's application for review and consideration on a comparative basis with that of intervenor. The applications must be considered on their relative merits in light of events as they stood in February of 1976. HEW must then designate the successful applicant, on the basis of that comparative review, as the Health Systems Agency for Oklahoma and must take whatever steps are necessary to make the designation on this basis.[14] In light of the lengthy and troubled history of this matter, the HEW official charged with making the decision on the merits would do well to make detailed findings in support of the decision reached.
 
 
 18
 In making this disposition as to the appropriate remedy, we necessarily reject the government's argument that the only possible relief available to plaintiff is recovery of its application preparation costs. This rule, as the government points out, is ordinarily applicable to disappointed bidders and grant applicants who show their substantive rights have been infringed by agency action. E. g., Cincinnati Electronics Corp. v. Kleppe, 509 F.2d 1080, 1088-89 (6th Cir. 1975). It is true that recovery of preparation costs, rather than expected profits under the lost contract, is the proper measure of recovery in a damages action based on agency noncompliance with bidding provisions. Keco Indus., Inc. v. United States, 428 F.2d 1233, 1240, 192 Ct.Cl. 773 (1970). It is not true, however, that a monetary award is the only relief that is ever available in such cases. See, e. g., M. Steinthal & Co., Inc. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289, 1300-06 (1971) (injunctive relief available to disappointed bidder in appropriate case).
 
 
 19
 In any event, we do not believe the analogy to disappointed bidders or grant applicants is sufficiently compelling to justify application in this case of the narrow rule obtaining in the procurement and grant selection areas instead of the generally applicable remedial steps delineated in subsections (1) and (2) of 5 U.S.C. § 706, quoted above.
 
 
 20
 Plaintiff was neither a simple grant applicant nor a bidder. Plaintiff, a nonprofit private corporation, was seeking designation as a planning, policymaking, and advisory body somewhat unique to our political system. Its members sought neither profit, as do bidders, nor money to facilitate research or other private purposes of their own, as do grantees. Rather, they sought to have their group selected as an entity capable of having substantial impact on the development and direction of health resources in their state.[15] Although a Health Systems Agency, Once chosen, receives annual grants to finance or partially finance its operations, designation as a Health Systems Agency entails much more than merely becoming entitled to federal grants. A Health Systems Agency is virtually quasi-governmental in function and is therefore vastly different from a government contractor or grant recipient.[16]
 
 IV.
 
 21
 In addition to complaining about the nonacceptance of its own application, plaintiff contends that the selection of intervenor amounted to an abuse of discretion under the terms of the Act. The gravamen of plaintiff's complaint in this regard is that intervenor's membership is inadequately representative of the community, contrary to the Act's requirement that such membership be "broadly representative of the social, economic, linguistic and racial populations, geographic areas of the health service area, and major purchasers of health care." 42 U.S.C. § 300L -1(b)(3)(C) (1976). Plaintiff also contends that the selection of intervenor's board members by the governor of Oklahoma is violative of 42 U.S.C. § 300L -1(b)(1)(A) (1976), which provides that a Health Systems Agency shall not be controlled by any other entity. Plaintiff is thus arguing that intervenor is dominated by those who have traditionally controlled health planning in Oklahoma, while its own membership includes persons from the full range of previously unrepresented groups intended by the Act to be included in the health decision process. Intervenor of course does not admit these deficiencies but claims in any event that they were corrected after the original filing. See note 3. In addition to disputing these contentions on substantive grounds, the government and intervenor challenge plaintiff's standing to raise them.
 
 
 22
 It would be inappropriate to reach these questions on this appeal; the very purpose of our requiring defendant to accept and consider plaintiff's application under the circumstances of this case is to insure that defendant weigh and consider the applications on a comparative basis. See Ashbacker Radio Corp. v. F. C. C., 326 U.S. 327, 332-34, 66 S.Ct. 148, 90 L.Ed. 108 (1945); F. C. C. v. Potsville Broadcasting Co., 309 U.S. 134, 145-46, 60 S.Ct. 437, 84 L.Ed. 656 (1940). We cannot review that process until it has been accomplished and a proper record compiled.
 
 
 23
 These consolidated cases are reversed and remanded to the district court with directions to fashion a remedy consistent with this opinion.
 
 
 
 [1]
 42 U.S.C. § 300k Et seq. (1976). While the stated purpose of the Act was to facilitate proper planning in the health field, we note that its enactment represents, among other things, the judgment of the Congress that there had been inadequate input from consumers and minority groups in the field of health services planning. See, e. g., 42 U.S.C. § 300L -1(b)(3)(C)(i). It was the judgment of Congress that rectifying this historical lack of input justified expenditure of the time and money required to ameliorate it, through such measures as an open application process for selection of Health Systems Agencies, which was designed to allow for comparative evaluation of which group seeking designation as a particular Health Systems Agency had the optimal combination of broad representation and health planning competence
 
 
 [2]
 Intervenor's application originated with a task force directed by the office of the governor. Plaintiff's application was prepared by an ad hoc group of providers and consumers
 
 
 [3]
 These changes included submitting additional information on the representativeness of intervenor's membership and adding a provision that intervenor's board members could not be removed by the governor, who already had the responsibility of making all board appointments. These changes were made at the suggestion of defendant's office, the review committee having voted to defer consideration of intervenor's application pending intervenor's consideration of the suggested changes
 
 
 [4]
 The evidence, discovered through the Freedom of Information Act, included a letter from HEW to the Regional Health Administrators, which outlined circumstances under which late applications should be accepted for first cycle consideration. There was also evidence that defendant's Region IV counterpart had accepted for first cycle consideration an application received on January 20
 
 
 [5]
 In Monsanto, the court rejected summarily the argument that, having set a deadline, the agency was without power to waive it:
 The bald argument on behalf of respondents is that the Board is powerless in the public interest to relax the time provisions of its procedural rules in any case before it. This contention is not worthy of serious consideration.
 205 F.2d at 764. It has also been noted that "an administrative agency is not a slave of its rules." Sun Oil Co. v. Federal Power Comm'n, 256 F.2d 233, 239 (5th Cir. 1958), Cert. denied, 358 U.S. 872, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958).
 These cases are not inconsistent with opinions stating that an agency is bound by its own regulations. E. g., United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 266-67, 74 S.Ct. 499, 98 L.Ed. 681 (1954); Borough of Lansdale v. Federal Power Comm'n, 161 U.S.App.D.C. 185, 494 F.2d 1104, 1113 (1974). These latter opinions would govern if the facts of the instant case were that plaintiff had tendered its application on January 17, relying on the published deadline of January 19, and was told by defendant that the designation had already been made.
 
 
 [6]
 The general rule is that an administrator has by implication all the powers necessary for the due and efficient exercise of those expressly granted. See, e. g., United States v. Jones, 204 F.2d 745, 754 (7th Cir.), Cert. denied, 346 U.S. 854, 74 S.Ct. 67, 98 L.Ed. 368 (1953); Gallagher's Steak House, Inc. v. Bowles, 142 F.2d 530, 534 (2d Cir.), Cert. denied, 322 U.S. 764, 64 S.Ct. 1288, 88 L.Ed. 1591 (1944)
 
 
 [7]
 This sound rule is necessary both practically and to promote the efficient operation of the government. In this day of bureaucratic proliferation, where only a fraction of administrative rules, practices, and guidelines are in the Code of Federal Regulations, and where authorizations from above range from published notices in the Federal Register to unpublished memoranda and phone calls, it would be virtually impossible for private individuals to find the information that would permit them reliably to deal with public officials. The government is in the best position to find such information and bring it forward. By the same token, any other rule would allow acts of government administrators to be called into question simply because there was no express delegation of the authority exercised, even though that authority was related and subordinate to an authority that had been expressly granted
 
 
 [8]
 No evidence in the record supports the trial court's finding of fact that defendant lacked discretion to extend the deadline. That finding was therefore apparently based on the court's view that HEW as an agency had no such discretion and that the deadline was jurisdictional. We have concluded that this view of the law was not correct. A finding of fact induced by a mistaken view of the law, like one without evidentiary support, is clearly erroneous. E. g., Chalk v. Beto, 429 F.2d 225, 227 (5th Cir. 1970); 9 C. Wright & A. Miller, Federal Practice and Procedure : Civil § 2585, at 734 (1971)
 
 
 [9]
 The text of the memorandum reads as follows:
 We have received several questions from Regional Office Staff concerning the administration of the requirement that applications for first cycle HSA designation and funding be received as of January 19, 1976. This memorandum is to document our decision on this issue.
 The Federal Register of November 17, 1975, contained a notice which specified that:
 "First cycle applications must be received by January 19, 1975 . . . ."
 The issue is whether or not to accept applications for first cycle designation which were received In the Regional Office after January 19, 1976.
 It is our policy to interpret the January 19 deadline in a reasonable and consistent manner without being unduly rigid. You should accept and consider all applications which were "in effect" received by January 19 as long as they are otherwise acceptable. This would include applications which were in final form as of that date.
 Obviously, the exercise of discretion in this area requires prudence. I am confident that you will examine the merits of each individual case carefully before deciding whether or not the application was "in effect" received by January 19.
 Record in 77-1147, vol. 2, at 74 (emphasis in original).
 
 
 [10]
 The government, in addition to attempting to disavow the authority of defendant Regional Health Administrator to accept late applications, argues that the officer who wrote the February 5 memorandum was without authority to authorize acceptance of such applications. It is precisely this kind of administrative authority "shell game" which the rule reaffirmed in this opinion is designed to prevent
 At least one other HEW Region conducted itself in reliance on that officer's authority. If we were to give credence to the government's attempted disavowal of the officer's authority, it would bring into serious question the validity not only of the acceptance and consideration of a late application by defendant's Region IV counterpart, but also innumerable acts of Regional Health Administrators and other officials in comparable circumstances.
 In any event, the defendant's authority to accept late applications does not turn on the February 5 memorandum. That memorandum, set out at note 9, merely reaffirms the authority already possessed and only seeks to offer guidance for its sound exercise.
 
 
 [11]
 The text of this memorandum is reproduced at note 9
 
 
 [12]
 This is not a case, then, of HEW expressly withholding discretion to extend the deadline, placing limitations on the exercise of that discretion, or establishing no guidelines for its exercise, thus leaving defendant free to set his own standards. In such cases, defendant's refusal to extend the application deadline would not ordinarily constitute an abuse of discretion
 
 
 [13]
 Notice outlining the designation process was published on October 17, 1975. 40 Fed.Reg. 48802 (October 17, 1975). Notice that application materials were available and that applications were due January 19, 1976, was not published until November 17, 1975. 40 Fed.Reg. 53297. Thus, only two to three months were available for preparation of the required, complicated applications
 
 
 [14]
 We are aware of concern that designation of plaintiff at this late date would be disruptive. Such disruption should be minimal, however, for if plaintiff is designated, its impact will necessarily be mostly prospective. For example, grants already made by intervenor to public and nonprofit entities, See n.16, would not be rendered invalid by the decision that plaintiff would begin serving as Oklahoma's Health Systems Agency. Similarly, approvals or disapprovals of proposed federal expenditures, See id., previously made by intervenor and relied upon by the government would not be rendered retroactively invalid
 
 
 [15]
 42 U.S.C. § 300L -2(a) (1976) outlines the responsibility to be vested in Health Systems Agencies:
 (a) For the purpose of
 (1) improving the health of residents of a health service area,
 (2) increasing the accessibility (including overcoming geographic, architectural, and transportation barriers), acceptability, continuity, and quality of the health services provided them,
 (3) restraining increases in the cost of providing them health services, and
 (4) preventing unnecessary duplication of health resources,
 each health systems agency shall have as its primary responsibility the provision of effective health planning for its health service area and the promotion of the development within the area of health services, manpower, and facilities which meet identified needs, reduce documented inefficiencies, and implement the health plans of the agency. To meet its primary responsibility, a health systems agency shall carry out the functions described in subsections (b) through (h) of this section.
 
 
 [16]
 The functions of a Health Systems Agency include compiling and analyzing data, 42 U.S.C. § 300L -2(b)(1); establishing and reviewing a comprehensive "health systems plan," Id. (2); Making grants to public and nonprofit entities in furtherance of the health systems plan, Id. (c)(3); and reviewing and approving or disapproving certain proposed uses of federal funds within the areas for which they have responsibility. Id. (e)(1)