**LA STAR CELLULAR TELEPHONE CO., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION,**

**BellSouth Mobility, Inc., et al., Intervenors.**

**No. 89–1345.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 12, 1990.

Decided March 30, 1990.

Arthur V. Belendiuk, with whom Gary S. Smithwick, Washington, D.C., was on the brief for appellant.

Roberta L. Cook, Washington, D.C., atty., FCC, with whom Robert L. Pettit, Gen. Counsel, Milan, Mich., Daniel M. Armstrong, Associate Gen. Counsel, Washington, D.C., and John E. Ingle, Deputy Associate Gen. Counsel, FCC, were on the brief for appellee. Diane S. Killory, atty., FCC, also entered an appearance for appellee.

William B. Barfield, Miami, Fla. and R. Frost Brannon, for BellSouth Corp., and Raymond F. Scully and John W. Berresford, Washington, D.C., for BellSouth Mobility, Inc., were on the joint brief for intervenors.

Before BUCKLEY, WILLIAMS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

Appellant La Star Cellular Telephone Company is competing with NOCGSA for the right to operate as the wireline carrier offering cellular telephone service to St. Tammany Parish, which is part of the New Orleans MSA. The Federal Communications Commission has granted NOCGSA an interim operating license for St. Tammany Parish, effective until it reaches a final decision on the competing applications for a permanent license. In so doing, the Commission denied La Star's request for such interim authority and its alternative suggestions that the Commission authorize ei-

ther the two competitors jointly, or a third party, to provide interim service.

We affirm the Commission's decision to grant sole interim operating authority to NOCGSA. Because it adequately balanced the need for uninterrupted service in St. Tammany Parish against the potential prejudice to La Star, and considered the problems with the other options that were suggested, we find that its decision does not violate the principle of *Ashbacker Radio Corp. v. FCC*, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945), and is neither arbitrary nor capricious.

## I. BACKGROUND

In July 1983, the Commission granted NOCGSA's unopposed application for a license to operate a cellular telephone system in part of the New Orleans MSA. One month later, NOCGSA applied to expand its geographic service area into St. Tammany Parish, which is also part of the New Orleans MSA. La Star then filed a competing application for authorization to provide cellular service to St. Tammany.

The Common Carrier Bureau rejected La Star's application as untimely, and granted NOCGSA's application, *New Orleans CGSA, Inc.*, No. 6904 (Oct. 1, 1984), *aff'd*, FCC 85–209 (May 6, 1985), and in February 1985 that company began to serve St. Tammany. Because the Commission had not provided adequate notice of the filing deadline, however, we ordered the Commission to reinstate La Star's application *nunc pro tunc. Maxcell Telecom Plus, Inc. v. FCC*, 815 F.2d 1551, 1560 (1987).

The Bureau duly reinstated La Star's application for a permanent license and rescinded NOCGSA's permanent authorization to operate in St. Tammany. In order to ensure uninterrupted service to the public, however, the Bureau also, on its own motion, authorized NOCGSA to continue operating in St. Tammany for 180 days under special temporary authority (STA), pursuant to 47 C.F.R. § 22.25(b)(3) & (c).

La Star then filed an application for an interim license. Following the Bureau's rejection of this application and its extension of NOCGSA's STA for an additional 180 days, La Star petitioned this court for an "order enforcing the court's mandate or alternatively the issuance of a writ of mandamus." La Star contended that the Commission's failure to take action on its application for permanent authority, combined with NOCGSA's continued service to St. Tammany, prejudiced its right to a fair hearing on its application for a permanent license. By an order of July 1, 1988, we denied La Star's petition, stating that our earlier order reinstating its application *nunc pro tunc* protected it from such prejudice: "In the event of a comparative hearing, our order precludes the FCC from considering evidence of NOCGSA's operations under its Special Temporary Authority."

Subsequent to our issuance of that order, the Bureau extended NOCGSA's STA for two additional periods of 180 days each, and the Commission, in the order under review, granted NOCGSA interim operating authority for St. Tammany Parish pending a final decision on the permanent applications. *La Star Cellular Telephone Co.*, 4 FCC Rcd 3777 (1989). Acting pursuant to 47 C.F.R. § 22.32(g), which permits interim authorization when "the public interest requires the prompt establishment of radio service in a particular community or area," the Commission determined that interim service to St. Tammany was "immediately and imperatively necessary"; that granting such authority to NOCGSA would best serve to ensure uninterrupted service; and that the resulting risk to La Star's application for a permanent license was slight. The Commission also rejected La Star's two alternative proposals—operation jointly by La Star and NOCGSA or by a third party—on the ground that the operational difficulties inherent in them outweighed any possible prejudice to La Star from letting NOCGSA continue to provide the service *pendente lite*. La Star now petitions for review of that order.

## II. ANALYSIS

The starting point for our analysis is *Ashbacker*, in which the Supreme Court held "that where two *bona fide* applica-

tions are mutually exclusive the grant of one without a hearing to both deprives the loser of the opportunity which Congress chose to give him." 326 U.S. at 333, 66 S.Ct. at 151. The Court was concerned that the Commission's decision to grant one of the applications would put the competing applicant "in the same position as a newcomer," and it understood "how difficult it is for a newcomer to make the comparative showing necessary to displace an established licensee." *Id.* at 332, 66 S.Ct. at 150.

The *Ashbacker* Court also implied that the Commission could, without a hearing, grant one of two competing applications for a permanent license if it found that the public interest demanded such urgency. *Id.* at 333, 66 S.Ct. at 151. This court has not confronted precisely that situation, but we have said that *Ashbacker* does not preclude the Commission from issuing an interim license, without a hearing on competing applications, if the Commission validly determines that the public interest so requires. Specifically, the Commission must balance the public interest in the immediate issuance of a license against the potential harm to the fair consideration of competing applications. *See Consolidated Nine, Inc. v. FCC*, 403 F.2d 585, 589–90 (D.C.Cir. 1968); *Community Broadcasting Co. v. FCC*, 274 F.2d 753, 761–63 (D.C.Cir.1960).

Here the Commission validly made the public interest finding, and adequately supported its decision to license NOCGSA rather than La Star or both of them or a third party to provide the interim service. The Commission's determination that the public interest requires uninterrupted cellular service to St. Tammany Parish by a wireline carrier is indisputable. Indeed, La Star conceded as much before the Commission. Termination of such service to St. Tammany would have a "severe and immediate impact on NOCGSA customers." Moreover, a cellular market, unlike a broadcast market, may be served by only one wireline and one non-wireline cellular provider; thus, the loss of the single wireline service, even on an interim basis, would remit the public to dependence upon a monopoly non-wireline provider. It was reasonable, per-

haps essential, therefore, that the Commission grant an interim license to someone.

We accept the Commission's determination that granting NOCGSA that license is unlikely to prejudice La Star's application. As we noted in *Consolidated Nine*, the factor most likely to prejudice the disfavored applicant in an interim licensing situation is the investment that the chosen applicant will make; the Commission would be hard pressed, in making a permanent licensing decision, to disregard the prejudice that ouster would cause the interim incumbent. 403 F.2d at 594. That concern is not implicated in the Commission's 1989 decision to license NOCGSA for the interim, however, because NOCGSA had already made the investment necessary to serve St. Tammany as a result of the Commission's erroneous decision granting it a permanent license in 1985. To be sure, the Commission must be vigilant against according NOCGSA an incumbent's preference in choosing a permanent licensee, but it reasonably concluded that its decision to grant NOCGSA the interim license is unlikely to increase the danger of the Commission's favoring NOCGSA's permanent application.

Of course, licensing NOCGSA and La Star jointly, or licensing a third party for the interim, would remove any possible prejudice to La Star owing to NOCGSA's unwarranted incumbency. The Commission reasonably concluded that problems with such operations outweigh this small possibility of prejudice to La Star, however.

Joint operation was impractical because NOCGSA's service in St. Tammany Parish was integrated with the rest of its operations in the New Orleans MSA, "employ[ing] a single switch and unified management, accounting, and marketing structure." Under these circumstances, "[d]evising a method to allocate NOCGSA's costs, plant, subscribers, and revenues between the main portion of the MSA and St. Tammany Parish, solely for purposes of establishing an interim operation, would be complex, time consuming, potentially disruptive to NOCGSA's customers, and, in all likelihood, the subject of much contention

between the affected parties." It is undoubtedly for such reasons that the Commission's cellular rules do not require it to favor joint over individual interim applications, *see* 47 C.F.R. § 22.32(g), in contrast to its rules for broadcasting, *see id.* § 73.3592(b). La Star points to only one non-broadcast case in which the Commission has ordered joint interim operation by two independent companies, *see Establishment of Interim Mailgram–Type Service for the State of Hawaii,* 57 FCC 2d 657 (1975), but in that situation there was no firm already in place. Thus, the benefit of a joint operation was available without the cost of somehow temporarily inserting an antagonistic partner into a portion of an on-going operation.

The decision not to resort to operation by a third-party was also reasonable. In addition to the problems caused by NOCGSA's unified operations, the Commission found that it would take unnecessary time and expense for a third-party operator to receive authorization and to set up its system. More important, there is no indication that anyone is willing to set up a cellular telephone system only to be displaced when a permanent licensee is chosen, in what may be a matter of months or at most of some years. The Commission was doubtful that anyone would even apply for such a cameo role, and we defer to its judgment, based upon its knowledge of the economics of the industry, without forcing it to prove as much by soliciting applications.

### III. Conclusion

La Star makes other arguments, but none of them merits treatment here. For La Star's comfort, we emphasize that today's decision has no effect upon our earlier mandate, which precludes the FCC from prejudicing La Star as a result of the Commission's "failure to accept its application as timely [or from] considering evidence of NOCGSA's operations under its Special Temporary Authority"—or, we might add, under the interim authority at issue here. As for the Commission's order granting NOCGSA that interim operating authority,

we find it to be in accordance with law, and it is, therefore, *Affirmed.*