JAJ CELLULAR, et al., Appellants,

v.

FEDERAL COMMUNICATIONS
COMMISSION, Appellee.

Metro Mobile CTS of Phoenix,
Inc., et al., Intervenors.

Nos. 94–1021, 94–1024.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 24, 1995.

Decided May 19, 1995.

Louis Gurman, Washington, DC, argued the cause, for appellants. With him on the joint briefs was William D. Silva, Washington, DC, for appellant McElroy Electronics Corp. Coleen M. Egan, Washington, DC, entered an appearance, for JAJ Cellular.

Roberta L. Cook, Counsel, Federal Communications Com'n, Washington, DC, argued the cause, for appellee. With her on the brief were William E. Kennard, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, and John E. Ingle, Deputy Associate Gen. Counsel, Federal Communications Com'n, Washington, DC.

R. Bruce Beckner, Washington, DC, argued the cause, for intervenors Metro Mobile CTS of Phoenix, Inc. and Bell Atlantic Enterprises Intern., Inc. With him on the brief were Stuart F. Feldstein and Jill K. McClelland, Washington, DC.

Before WALD, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

JAJ Cellular ("JAJ") and McElroy Electronics Corporation ("McElroy") appeal from an order of the Federal Communications Commission ("FCC" or "Commission") granting interim operating authority to Bell Atlantic Corporation ("Bell Atlantic"), as successor to Metro Mobile CTS of Phoenix, Inc. ("Metro Mobile"), to provide cellular telephone service in a "fill-in" area in the Phoenix metropolitan area where JAJ, McElroy, and Bell Atlantic are competing for permanent operating authority. We affirm the Commission's order.

## I. BACKGROUND

This case arises in the wake of our decision in *McElroy Electronics Corp. v. FCC*, 990 F.2d 1351 (D.C.Cir.1993), where we ordered the FCC to reinstate *nunc pro tunc* various applications to provide cellular telephone service which the Commission had erroneously dismissed as "premature." Among these were applications by JAJ and McElroy to serve the "fill-in" area within the Phoenix metropolitan statistical area ("MSA") at issue in this case.

When the Commission awarded the first round of licenses to provide cellular communications service in the early 1980s, its policy favored applicants who made a commitment to provide service to the larger part of a metropolitan area.[1] Applicants were not required, however, to serve the entire MSA. As a result, in many MSAs—including Phoenix—there were gaps in cellular coverage, usually in less heavily-populated fringe areas or pockets within the MSA. The Commission gave the initial licensee the exclusive right to expand or "fill in" its service into these unserved areas for a period of five years after the first license was issued for the MSA.[2] After that date, the Commission said, it would accept competitive applications to serve any remaining unserved "fill-in" areas.

The *McElroy* litigation arose when the Commission, interpreting its own regulations, said the competitive application period for "fill-in" service did not commence automatically upon expiration of the incumbent's five year exclusive expansion period, but instead would begin on filing dates to be announced by the Commission. Under this interpretation, the Commission dismissed as "premature" applications for various "fill-in" areas that McElroy and JAJ had submitted after the expiration of the five-year exclusive period, but before the Commission had announced specific filing dates. We concluded that although the Commission had authority to adopt a policy not to accept applications until an announced filing date, it had failed to provide sufficient notice of that policy to applicants, and therefore the policy could not

serve as the basis for dismissing their applications. *McElroy*, 990 F.2d at 1363–64.

Among the applications we ordered reinstated were those of McElroy and JAJ seeking permanent authority to provide cellular service in a "fill-in" area in the Phoenix MSA for which the Commission had in the meantime granted permanent authority to Metro Mobile, the incumbent provider of cellular service on frequency block A in the Phoenix market. Acting under this disputed authority, Metro Mobile constructed three cells and began providing service in the "fill-in" area in 1992. Because JAJ's and McElroy's reinstated applications were inconsistent with Metro Mobile's permanent authority, Metro Mobile petitioned the Commission for special relief, requesting *inter alia* approval to continue to provide service on an interim basis pending an award of permanent authority to one of the applicants. The bulk of Metro Mobile's petition, however, concerned issues not germane to this appeal.[3]

JAJ and McElroy opposed Metro Mobile's petition for special relief, alleging that Metro Mobile had engaged in misconduct in connection with its application and had made misrepresentations in certain required technical filings. Like Metro Mobile's petition, however, JAJ's and McElroy's oppositions were principally concerned with issues other than interim authority. JAJ's opposition did argue, albeit briefly, that it would be contrary to FCC policy to award interim operating authority to Metro Mobile while also allowing Metro Mobile to seek permanent authority. McElroy's opposition argued additionally that Metro Mobile had been operating illegal-

---

1. Licenses were awarded on a competitive basis. The radio spectrum set aside for cellular service was divided into two frequency blocks, denominated block A and block B, to allow two cellular providers for each market area. Metro Mobile was awarded permanent authority to serve block A in most of the Phoenix MSA; US West was awarded permanent authority to serve block B.

2. The Commission subsequently modified the rule, providing that the five-year exclusive expansion period would commence on the date of the licensee's own initial authorization, rather than the date of the first license in the market. *See Order on Reconsideration of Second Report and Order*, 4 F.C.C.R. 5377, 5379–80 (1989).

3. Metro Mobile principally sought retroactive application of the Commission's revised five-year "fill-in" rule, *see supra* n. 2, to the Phoenix MSA. Metro Mobile was awarded its first license to provide service on block A in the Phoenix MSA in October, 1984, nearly two years after block B service was awarded to US West. If the Commission applied the revised five-year rule retroactively, Metro Mobile's exclusive five-year fill-in period would commence not in 1982, but in October, 1984, and would therefore end in October, 1989. Consequently, McElroy's and JAJ's applications, which were filed in January, 1989 and March, 1989 respectively—within Metro Mobile's "revised" exclusive expansion period—would have been untimely.

ly and should not be "rewarded" with interim operating authority, and that McElroy's own application for permanent authority would be prejudiced if interim authority were granted to Metro Mobile.

On December 13, 1993, the Commission rescinded Metro Mobile's permanent authority in the disputed three-cell "fill-in" area, and returned its application to "pending" status alongside those of JAJ and McElroy. *Metro Mobile CTS, Inc.*, 8 F.C.C.R. 8675, 8676 (1993). In the same order, the Commission granted Bell Atlantic, as successor to Metro Mobile,[4] interim operating authority to continue to provide cellular service in the disputed area pending an award of permanent authority. *Id.* at 8677. Citing its earlier decision in *La Star Cellular Telephone Co.*, 4 F.C.C.R. 3777 (1989), *aff'd*, 899 F.2d 1233 (D.C.Cir.1990), the . Commission reasoned that because Metro Mobile's cells were already in place and providing service, and because the alternative would be no service on block A in the disputed area until permanent authority was granted, the public interest would be served by allowing Bell Atlantic/Metro Mobile to continue to provide uninterrupted service in the area on an interim basis. *Metro Mobile*, 8 F.C.C.R. at 8677. The Commission also stated that the award of interim authority would be "without prejudice" to future action on any of the applications for permanent authority. *Id.*

■ JAJ and McElroy appeal from that order, challenging the Commission's grant of interim operating authority on various grounds.[5]

## II. DISCUSSION

### A. *Application, Notice, and Hearing Requirements*

■ Appellants contend the FCC acted arbitrarily and capriciously by granting interim operating authority without submission of a formal application by Metro Mobile, and by failing to submit Metro Mobile's request for special relief to public notice and comment.

The Commission responds that our decision in *La Star Cellular Telephone Co. v. FCC*, 899 F.2d 1233 (D.C.Cir.1990), is controlling and disposes of appellants' objections. In that case, the Commission had initially rejected as untimely La Star's application to provide cellular service to St. Tammany Parish, an unserved area within the New Orleans MSA, and granted the incumbent cellular provider's application for permanent authority to expand its service area into the parish. Because the Commission had not given adequate notice of the filing deadline, however, we ordered La Star's rejected application reinstated *nunc pro tunc*, *Maxcell Telecom Plus, Inc. v. FCC*, 815 F.2d 1551, 1560 (1987), necessitating rescission of the incumbent's permanent authority to serve the parish. Without a competitive hearing, the Commission then granted the incumbent interim operating authority to provide uninterrupted cellular service in the

---

4. In 1992, Bell Atlantic Corporation acquired all the stock of Metro Mobile CTS, Inc., the parent of Metro Mobile CTS of Phoenix, Inc. In the subsequent reorganization, Metro Mobile CTS of Phoenix became a subsidiary of Bell Atlantic's subsidiary, Bell Atlantic Enterprises International, Inc. Bell Atlantic or its subsidiary is thus the successor-in-interest to Metro Mobile CTS, Inc.

5. As a threshold matter, we reject intervenor Bell Atlantic's contention that JAJ and McElroy lack standing to bring this appeal. To qualify for Article III standing, appellants must show an "actual or imminent" injury-in-fact, fairly traceable to the challenged agency action, and likely to be redressed by the relief they seek. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). JAJ and McElroy claim that their applications for permanent authority will be prejudiced by the

Commission's allegedly wrongful award of interim operating authority. Specifically, they claim the award prejudges the issue of Metro Mobile's character qualifications, cloaking its actions in a presumption of validity despite appellants' contentions that Metro Mobile unlawfully constructed facilities in the disputed area. This alleges a sufficiently concrete injury to appellants, traceable to the agency's action, and redressable by the relief they seek, *i.e.*, vacating the award of interim authority.

Our decision on the merits of this case construes the Commission's order to include a binding commitment *not* to prejudice JAJ's and McElroy's applications for permanent authority. *See* Part II.A. *infra*. We also construe the order as *not* adjudicating character qualifications issues. *See* Part II.B. *infra*. Absent that limiting construction, however, appellants might indeed have suffered a cognizable injury.

disputed area while the Commission considered the pending applications for permanent authority. We affirmed the Commission's grant of interim authority, noting that the Commission had made the requisite finding under 47 C.F.R. § 22.32(g) that the public interest demanded an immediate grant of interim authority in order to continue uninterrupted service to cellular customers. *La Star*, 899 F.2d at 1234–35. We also said that the Commission had adequately considered and explained its reasons for rejecting proposed alternatives, and fairly weighed "the potential harm to the fair consideration of competing applications" for permanent authority, concluding that such prejudice was unlikely because the interim licensee had already made the necessary investments. *Id.*

Here, the Commission says, there was similarly a public interest need for an immediate grant of interim operating authority to avoid an interruption in service to Metro Mobile's customers. Furthermore, the Commission contends, here, as in *La Star*, the grant of interim authority would not prejudice the Commission's future decision on permanent authority, because the interim operator had already made the necessary investments to provide the service under an improper (and later rescinded) grant of permanent authority. *Cf. La Star*, 899 F.2d at 1235; *Consolidated Nine, Inc. v. FCC*, 403 F.2d 585, 594 (D.C.Cir.1968) (greatest prejudice to competitors is if interim incumbent makes investments that Commission will be inclined to protect).

The facts of *La Star* are strikingly similar to those of the present case. We note at the outset, however, that our decision in *La Star* was made in the context of an agency record and an articulated agency rationale for its decision in that case. Based on our examination of that record, we concluded that the Commission had weighed the relevant factors and offered a reasoned explanation for its action, supported by evidence in the record as a whole. *See La Star*, 899 F.2d at 1235.

In the case now before us, the agency record and its articulated rationale are exceedingly sparse. The Commission offers but a single paragraph of explanation, which can be summed up in a few propositions.

The Commission asserts that "service to the public will cease unless we take further action." 8 F.C.C.R. at 8677. It cites *La Star* as "a similar situation," and states that "[f]or similar reasons" to those in *La Star* "the public interest strongly supports and requires grant of interim operating authority." *Id.* Finally, it states that "the grant of interim operating authority is without prejudice" to applications for permanent authority. *Id.*

Such a threadbare explanation of the bases for the Commission's decision might in different circumstances be less than illuminating, and even court reversal. Nonetheless, although it is a close call, we conclude that the facts and circumstances of this case so closely parallel those of *La Star* that, in context, the Commission's terse explanation must be adjudged adequate, reasoned, and supported by the record evidence.

*La Star* stands for the proposition that if the Commission expressly finds there is an immediate public interest need for uninterrupted service, adequately considers the alternatives, fairly weighs the prejudice that may result to competing applicants, and adequately explains its reasoning, it may grant interim authority to an ousted incumbent under § 22.32(g) pending the award of permanent authority. The Commission may even proceed to do so without a hearing, because § 22.32(g) authorizes the grant of interim authority when "the public interest requires prompt establishment of radio service in a particular community or area," 47 C.F.R. § 22.32(g). *See La Star*, 899 F.2d at 1234–35.

Here, the Commission made the requisite findings, considered the relevant factors, and offered a reasoned explanation for its decision. The Commission in its *Metro Mobile* order expressly grounded its action in § 22.32(g), which authorizes the Commission to grant "one or more mutually exclusive applications" for *permanent* service on an *interim* basis where "the public interest requires prompt establishment of . . . service." 47 C.F.R. § 22.32(g). Under § 22.32(g), then, neither a formal separate application to provide interim service nor public notice and comment on such an application were required, given the Commission's determina-

tion that there was an immediate public interest need for the action taken. *See La Star*, 899 F.2d at 1235.

■ The *Metro Mobile* order includes an express finding that the public interest in uninterrupted service requires an immediate grant of interim authority, *see* 8 F.C.C.R. at 8677, triggering the Commission's § 22.32(g) authority. We certainly do not understand *La Star* to say that *whenever* an incumbent's permanent authority is ousted, there will be a public interest need for uninterrupted service requiring a grant of interim authority; nor that it will always be appropriate to award interim authority to the incumbent; nor that, even where a pressing public interest is present, it automatically outweighs potential prejudice to competing applicants. The Commission must make those determinations on a case-specific basis, as indeed it did in *La Star*. We do, however, understand the Commission's *Metro Mobile* decision, fairly construed, to say that given the facts and circumstances of *this* case, there is an immediate and pressing public interest need for uninterrupted service, based upon "similar reasons" to those in *La Star* where the facts and circumstances were nearly identical. We concluded that the facts of *La Star* were sufficient to support such a determination. *La Star*, 899 F.2d at 1235. Appellants advance no sound reason to reach any other conclusion here. We conclude that the Commission made the necessary public interest finding, that there was an adequate basis in the record to support it, and that, reasoning by analogy to *La Star*, the Commission provided an adequate explanation of its reasons for making that determination.

■ We are more troubled by the next prong of the *La Star* inquiry: whether the Commission adequately considered the alternatives to a grant of exclusive interim authority to the incumbent. *See La Star*, 899 F.2d at 1235–36 (concluding that the Commission "reasonabl[y]" rejected alternatives). There is no mention of alternatives in the Commission's order, much less any explanation of why they would be undesirable. *See* 8 F.C.C.R. at 8677. Concededly, appellants did not offer any alternatives for the Commission to consider, but given that the Com-

mission afforded them neither a notice-and-comment period nor a formal hearing before proceeding to issue interim authority to the incumbent, their failure to advance alternatives at that stage is perhaps excusable. It may be, as intervenor Bell Atlantic suggests, that no practical alternatives were available, although *La Star* suggests otherwise. There, we noted the possibility that the Commission might have awarded joint interim authority or licensed a third party for the interim period, *La Star*, 899 F.2d at 1235, alternatives the Commission expressly considered and rejected in that case. *See* 4 F.C.C.R. at 3780. But be that as it may, appellants have not argued here that the Commission's decision was fatally flawed for failure to consider alternatives, and therefore they must be deemed to have waived that argument. We caution the Commission, however, that although § 22.32(g) may authorize truncated procedures without a notice-and-comment period or a hearing, such procedures appear to invite a future situation in which the Commission may be led to overlook reasonable alternatives, because interested parties are not offered opportunities to call them to the Commission's attention.

Finally, *La Star* requires the Commission to fairly weigh the potential prejudice to competing applicants for permanent authority. *La Star*, 899 F.2d at 1235. We think the Commission did so here. Certainly the Commission gave *some* consideration to the possibility of prejudice to nonincumbent applicants when it concluded that the "grant of interim operating authority is without prejudice to future action on any of the reinstated applications." *Metro Mobile*, 8 F.C.C.R. at 8677. If this were merely a predictive finding of the likely absence of prejudice, we might think the Commission's statement so conclusory that, without further elaboration or indication of the record evidence upon which that judgment is based, the agency's explanation would be inadequate. But we understand the Commission's statement to be more than a prediction concerning its future action. The statement that the grant of interim authority "is without prejudice" appears instead to be a binding commitment by the Commission that its award of interim

840

authority to Bell Atlantic does not decide, and therefore will have no effect adverse to appellants upon, the issues relevant to the award of permanent operating authority. In addition, in context, it must also be understood to mean that Bell Atlantic's application for permanent authority will not receive preferential treatment as "the status quo to be preserved." *La Star*, 4 F.C.C.R. at 3780. Thus understood, the Commission's determination that there is no prejudice to appellants because the Commission so binds itself is reasonable and adequately explained.

B. *Appellants' Oppositions and Character Qualifications Issues*

■ Appellants next contend that the Commission disregarded their oppositions to Metro Mobile's petition for special relief. Their complaint is, in part, that they were entitled to a response to all the issues raised in their oppositions, but they further contend that once Metro Mobile's character qualifications were put in issue anywhere in the record, the Commission was obligated to consider them before awarding interim operating authority. *Cf. Folkways Broadcasting Co. v. FCC*, 379 F.2d 447, 449 (D.C.Cir.1967) ("Congressional policy clearly bars any use of the air waves by those whose public interest qualifications have not been established," except in "extraordinary circumstances requiring emergency operations."). Appellants' underlying argument is that Metro Mobile should have been disqualified from holding even interim operating authority due to its alleged misconduct in building facilities while appellants' challenges to its authority were still pending, and its alleged misrepresentations in informational filings to the FCC.

The Commission, on the other hand, argues that the character qualifications issues raised in JAJ's and McElroy's oppositions to Metro Mobile's request for special relief are wholly irrelevant to the award of interim authority. *See* Government Brief at 21. Under *La Star*, the Commission argues, its decision on interim authority is based only on the immediate public interest need and the lack of prejudice to applicants for permanent authority. Therefore, the Commission reasons, it was not required to include consideration of Metro Mobile's character qualifications in its explanation of the basis for its decision, which considered all relevant factors.

■ We cannot entirely agree with either party's reasoning. Character qualifications are *always* a relevant consideration in the award of a license, not because we say so but because Congress has definitively said so. *See Folkways*, 379 F.2d at 449. If the Commission rescinded a permanent license on the basis of serious character disqualifications, such as fraud or flagrantly discriminatory practices, it surely would be appropriate for the Commission to take that factor into account in deciding whether to award interim authority under § 22.32(g). *See Voice of Reason, Inc.*, 37 F.C.C.2d 686 (1972) (denying extension of temporary operating authority on the basis of character qualifications). At the very least, we would say that the Commission *could* consider character qualifications in deciding whether or not to grant interim authority. Certainly to that extent, character qualifications are relevant to a § 22.32(g) decision.

That said, however, appellants have not convinced us that the Commission acted arbitrarily, capriciously, or unlawfully by *not* taking character qualifications issues raised in appellants' oppositions into account in this proceeding. Bell Atlantic's interim authority was granted under § 22.32(g), which does not require a separate formal application or a hearing, but instead authorizes the Commission to award interim authority to one or more of the applicants for *permanent* authority when the public interest so requires. Although Metro Mobile first broached the subject of interim authority in its petition for special relief, the Commission apparently did not regard that petition as a separate "application" for interim authority; indeed, the Commission's order never even mentions the petition for special relief. Under the circumstances, we do not view the § 22.32(g) proceeding at issue here as having been a disposition of Metro Mobile's petition for special relief. Since the § 22.32(g) proceeding did not directly concern Metro Mobile's petition for special relief, neither would it be reasonable to view appellants' *oppositions* to that

petition as appertaining to the § 22.32(g) proceeding. That being the case, the Commission was not obligated to address JAJ's and McElroy's oppositions in the § 22.32(g) proceeding—presumably it remains under an obligation to consider the issues raised in those oppositions at some point.

Appellants argue, however, that even if the Commission was not obligated to respond to their oppositions in this proceeding, it was required to consider character qualifications issues raised anywhere in the record. But the principal case relied on by appellants, *Folkways,* does not forbid the Commission from *ever* granting interim operating authority without first considering outstanding character qualifications issues raised elsewhere in the record. Indeed, the *Folkways* court clearly recognized that there are exceptions, however narrow, under which in "extraordinary circumstances" the Commission may find that the public interest necessitates a grant of interim authority, even before character qualifications issues are resolved. 379 F.2d at 449. In the *Folkways* case, the Commission had not made the necessary "strong public interest finding," and so had failed to justify its award of interim authority without first addressing character qualifications. *Id.* Here, in contrast, there was such a public interest finding. *See* 8 F.C.C.R. at 8677 (relying in part on reasoning in *La Star,* 4 F.C.C.R. at 3780, where in analogous circumstances the Commission found uninterrupted service "immediately and imperatively necessary"). In similar cases where the Commission has granted interim operating authority on the basis of an urgent public interest in uninterrupted service, it has deferred consideration of character qualifications issues to proceedings on permanent licensing. *See Telephone and Data Systems, Inc.,* 9 F.C.C.R. 938, 957 (1994). We see no reason why it cannot do so here given its determinations that, in the circumstances of this case, the public interest urgently demanded uninterrupted service and the award of temporary authority to Bell Atlantic would not prejudice applicants for permanent authority.

We do not comment on the merits of the underlying question raised in appellants' op-positions—whether Metro Mobile engaged in misconduct and misrepresentation. We do not think the Commission has in any way resolved or even indirectly addressed that question by awarding interim operating authority to Bell Atlantic. The question thus remains before the Commission, which may or may not decide that appellants have raised a substantial and material question meriting designation as a separate issue in subsequent proceedings. At this stage, then, the question of Bell Atlantic/Metro Mobile's character qualifications is in no way foreclosed by the Commission's decision, or by ours here today.

We conclude that the Commission did not act arbitrarily or capriciously by granting interim operating authority without responding to "character qualifications" issues raised in appellants' oppositions to Metro Mobile's petition for special relief.

## C. Simultaneous Applications for Interim and Permanent Authority

Appellants finally contend that by granting interim authority while Bell Atlantic/Metro Mobile's application for permanent authority was also pending, the FCC violated its own well-established policy against granting interim authority to an applicant for permanent authority. Obviously, no such policy barred an applicant for permanent authority from receiving interim authority in *La Star,* 4 F.C.C.R. 3777 (1989), where the Commission granted such authority to one of two competing applicants for permanent authority. Moreover, appellants' contention appears flatly contrary to § 22.32(g), which authorizes the Commission to award operating authority on an interim basis to "one or more mutually exclusive applicants" for *permanent* authority when the public interest so requires. 47 C.F.R. § 22.32(g). Appellants argue, however, that a new policy has emerged *after* the FCC decided *La Star* in 1989.

The Commission insists in reply that appellants are misreading its post-*La Star* precedents. According to the Commission, its present policy is to prohibit simultaneous applications for interim and permanent authority only when *no* service is currently being provided. But the circumstances are

different here because Metro Mobile was already providing service, and the whole point of the award of interim authority was to allow its customers to continue to receive that service uninterrupted. In similar circumstances where permanent authority has been rescinded, threatening a disruption of service, the Commission says it *has* allowed applicants for permanent authority to provide interim service. The principal post-*La Star* case cited by appellants, *Portland Cellular Partnership,* 6 F.C.C.R. 2283 (1991), does not support their broad claim of a new, post-*La Star* policy. In that case, the Commission expressly relied on the *La Star* rationale, and concluded that since Portland Cellular—whose operating authority had been rescinded—was no longer an applicant for permanent authority, there was no danger that granting it interim authority would prejudice applicants for permanent authority. But that outcome surely does not imply that the Commission will award interim authority *only* to parties not also applying for permanent authority. In *Telephone and Data Systems, Inc.,* 9 F.C.C.R. 938 (1994), the Commission rescinded a party's permanent authority but granted it interim authority; the party nonetheless remained eligible for permanent authority. The Commission acted similarly in *Highlands Broadcasting Co., Inc.,* 9 F.C.C.R. 5746 (1994), albeit in a broadcasting context. Appellants cite no cases to the contrary. The "well-established policy" that appellants say the Commission violated appears to us nonexistent, and the Commission's action was therefore not arbitrary and capricious.

### III. Conclusion

For the foregoing reasons,[6] the order of the Commission is affirmed.

*It is so ordered.*

---

6. Bell Atlantic moved to strike from the record a letter to the Clerk of the Court dated March 20, 1995, from Louis Gurman, counsel for appellant JAJ Cellular. Because we do not rely on this letter, Bell Atlantic's motion is denied.